492 P.2d 727

**DIRECT SELLERS ASSOCIATION of Arizona, and Frank Hoeschler, Appellants,**

**v.**

**Arthur McBRAYER et al., Appellees.**

**No. I CA–CIV 1550.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 18, 1972.

Rehearing Denied Feb. 28, 1972.

Review Granted May 23, 1972.

232

Hughes, Hughes & Conlan by John C. Hughes, Phoenix, for appellants.

Estrada & Estrada, Phoenix, for appellee McBrayer.

Maricopa County Legal Aid Society by Jerry Levine, Tempe, for appellee Maricopa County Legal Aid Society.

JACOBSON, Judge.

This appeal calls into question the constitutionality of the legislative enactments dealing with initiative and referendum measures and the further question of when is "the next general election" at which vot-

ers may be allowed to exercise their franchise on initiative and referendum measures.

The time factors set forth in the following recitation of facts are of importance. During the second regular session of the 29th legislature[1], the legislature passed and the governor signed House Bill 102 (A.R.S. § 44–5001 et seq.), regulating the direct selling of merchandise to the public in their homes. This legislation, which carried no emergency clause, would have become effective ninety days following adjournment of the legislative session[2]—i. e., on August 11, 1970. On August 10, 1970, through the efforts of appellant, Direct Sellers Association of Arizona[3], petitions purportedly containing 30,000 signatures were filed in the office of the Secretary of State seeking to have House Bill 102 placed on the ballot by way of referendum.

On September 11, 1970, appellees, Arthur McBrayer and Maricopa County Legal Aid Society, filed a special action in Maricopa County Superior Court seeking to declare null and void the petitions filed by appellants because of an alleged failure to comply with the circulators' statutory affidavit forms and to enjoin the appellee, Wesley Bolin, Secretary of State, from placing the referendum measure on the ballot. On the same date an order to show cause was issued, and directed to the Secretary of State requiring him to appear before the Superior Court on September 17, 1970 and to show cause why the relief prayed for in the special action should not be granted. Although it is apparent that appellees were aware of the efforts of appellants in obtaining these signatures, they were not joined as real parties in interest to the special action. After the Secretary of State had been served in the special action, the Attorney General's office forwarded a copy thereof to appellants.

On the date set for hearing, appellants filed with the trial court a motion to intervene, a proposed answer in intervention, and a crossclaim, seeking to enjoin the Secretary of State from placing the referendum measures on the ballot for the November 3, 1970 general election. This crossclaim alleged that the statutory time within which to allow arguments pro and con to the measure could not be met and that the time necessary to prepare and distribute the necessary publicity pamphlets could not be complied with before the next general election to be held on November 3, 1970.

On September 17, 1970, the Court convened at 2 p. m. at which time appellants' motion in intervention was granted and its pleadings allowed to be filed. Following arguments on motions to strike, the appellants moved for a continuance and objected to any testimony being taken as they had not had an opportunity to prepare. These motions were denied. The only evidence presented was the affidavits of the circulators of the petitions. It was stipulated that all the affidavits which were attached to the petitions filed by appellants failed to contain a certification that the circulator was "a qualified elector of the State of Arizona". Based upon this failure to comply with the statutory form, the trial court held that the referendum petitions were legally insufficient as a matter of law and enjoined the Secretary of State from placing the referendum measure on the ballot. This appeal followed.

Appellants present the following questions for review:

(1) Is a statutory requirement that a circulator of a referendum petition be a qualified elector valid when the constitutional provisions dealing with initiative and referendum measures do not require such a qualification?

---

1. This regular session of the legislature convened in January, 1970.

2. Article IV, Part 1, § 1 of the Arizona Constitution, A.R.S., provides in part:
   " . . . but to allow opportunity for Referendum Petitions, no Act passed by the Legislature shall be operative for ninety days after the close of the session of the Legislature enacting such measure. . . ."

3. Appellant, Frank Hoeschler, is engaged in the business of direct home selling.

(2) Did the trial court abuse its discretion in denying appellants' motion for a continuance in order to permit them to present evidence that the circulators were in fact qualified electors?

The right of initiative and referendum has been reserved to the people of Arizona by the Arizona Constitution. Article IV, Part 1, § 1 of the Arizona Constitution sets forth the form and the contents of the referendum petition and further provides:

"(9) . . . [E]ach sheet containing petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed to be initiated or referred to the people, and every sheet of every such petition containing signatures *shall be verified by the affidavit of the person who circulated said sheet or petition, setting forth that each of the names on said sheet was signed in the presence of the affiant and that in the belief of the affiant, each signer was a qualified elector of the State,* or in the case of a city, town, or county measure, of the city, town, or county affected by the measure so proposed to be initiated or referred to the people." (Emphasis added.)

This section of the Constitution by its own terms is made self executing (Article IV, Part 1, § 1(15), Arizona Constitution).

In 1953, the legislature enacted various changes in the form wording of the initiative and referendum petition and added the provision that:

". . . no person other than a qualified elector, shall circulate an initiative or referendum petition and all signatures verified by any such person shall be void and shall not be counted in determining the legal sufficiency of the petition." A.R.S. § 19–114.

In conformity with this statutory pronouncement, the statutory form of the affidavit of the circulator of initiative and referendum petition was changed to read: "I, ————, *a qualified elector of the State of Arizona,* being first duly sworn, say: . . ." A.R.S. § 19–112, subsec. C. (Emphasis added.)

It is the foregoing italicized language that was missing from the affidavits of the circulators of the referendum petitions involved in this action.

▮ Appellants contend that since the qualification "a qualified elector of the State of Arizona" is not required by the Arizona constitutional provisions dealing with the initiative and referendum process and since these constitutional provisions are self executing, the legislature may not add a requirement that is not contained in the constitution itself. With this contention, we do not agree. Merely because a constitutional provision is by its terms "self-executing" does not mean that the legislature is forever barred from legislating on the subject, provided that such legislation does not unduly restrict or hinder the constitutional provision and the legislation reasonably supplements the constitutional purpose. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950); Fry v. Mayor and City Council of Sierra Vista, 11 Ariz. App. 490, 466 P.2d 41 (1970).

It thus becomes the duty of the court to determine whether the additional legislative requirement that circulators of petitions be qualified electors unduly hinders or restricts or is supplemental to the constitutional purpose. The purpose of the constitutional provisions dealing with initiative and referendum was aptly captured in the opinion in Whitman v. Moore, 59 Ariz. 211, 125 P.2d 445 (1942) (overruled in part by Renck v. Superior Court, 66 Ariz. 320, 187 P.2d 656 (1947):

"The history of our Constitution and its adoption, to which we have previously referred, shows beyond the possibility of contradiction that the people themselves deliberately and intentionally announced that, by its adoption, they meant to exercise their supreme sovereign power directly to a far greater extent than had been done in the past, and that the legislative authority, acting in a representative capacity only, was in all respects intended to be subordinate to di-

rect action by the people." 59 Ariz. at 220, 125 P.2d at 450.

As previously indicated, the present statutory language requiring that a circulator of petitions be a qualified elector was added in 1953. It is clear that at that time, the legislature was of the opinion that the purpose of the initiative and referendum process as expressed in *Whitman* had been corrupted, as is indicated in the Declaration of Purpose of this House Bill:

"In recent years small pressure groups, taking advantage of the substantial increase in the size of the electorate and the resultant great numbers of uninformed signers of initiative and referendum petitions, have attempted, through fraudulent and corrupt practices in connection with the circulation of petitions, to appropriate this fundamental right of the people to their own selfish purposes. These abuses have tended to bring the initiative and referendum processes into disrepute. It is the sense of this legislature that in order to prevent the recurrence of such abuses and to safeguard to the people their right of initiative and referendum in its original concept, legislation should be enacted further implementing the provisions of the Constitution governing the exercise of that right." Ch. 82, (1953) Ariz. Sess.Laws, p. 155.

While such a Declaration of Purpose appearing as a preamble to legislation is not controlling on the courts, it is persuasive when considering whether a legislative enactment is in harmony with the spirit of the constitutional provision. We do not feel it could be seriously disputed that under the constitutional provisions under consideration that the legislature could require that circulators be of an age consistent with reason and understanding. Likewise, we are of the opinion that the legislature could, consistent with the constitutional guidelines, require that circulators of initiative and referendum petitions be qualified electors, especially when the Constitution itself allows only qualified

electors to sign such petitions. We therefore hold that the requirement that circulators of initiative and referendum petitions be qualified electors is a valid exercise of the legislative power.

This brings us to the second question raised by the appellant: Did the trial court abuse its discretion in disallowing a continuance to enable appellant to prove that the circulators were in fact qualified electors? In order to answer this question the court must first answer two additional questions: (1) What is the legal effect of failing to designate in the circulators' affidavits that the circulators were qualified electors and; (2) in view of the time limitations facing the court, was the denial of the continuance an abuse of the court's discretion?

Obviously, if the failure to include the words "a qualified elector of the State of Arizona" in the circulator's affidavit rendered all the signatures contained in those petitions null and void, the court did not abuse its discretion in denying a continuance for the purpose of attempting to breathe life into a dead issue. On the other hand, if such omission rendered the petitions only vulnerable to attack, but rehabilitatable, then this court must reach the second question posed—the pressure of time. The first question was posed by the court in Whitman v. Moore, *supra*:

"And what is the effect if the petitioner or verifier fails to comply fully with the formal requirements of the constitution? Does it prevent petitioner's name from being counted under any circumstances, or may the lacking information be supplied otherwise?"

The Court answered its own question as follows:

"We think in reason, and considering the background of the constitution, the intent of its framers and the people who adopted it was that the effect of a deviation from the constitutional requirements in any of these particulars as to the manner of furnishing the necessary information by either petitioner *or verifier, is not to make the signature void,*

but to destroy the presumption of validity, and placed upon the one desiring to sustain the signature the burden of proving by evidence *aliunde* the petition that the signer was qualified in all respects." (Emphasis added.) 59 Ariz. at 225, 125 P.2d at 453.

*Whitman* is also clear in holding that the failure to follow legislative requirements as compared to constitutional requirements merely shifts the burden of proving, in actuality, the validity of the signature.

■ Following the express holdings in *Whitman*, we hold that the failure to include the words "a qualified elector of the State of Arizona" in the circulator's affidavit does not make the signatures appearing on the petitions null and void, but merely destroys their presumption of validity, which presumption may be reinstated on proof that the circulators were in fact qualified electors.

■ We further hold that the statutory language of A.R.S. § 19–114, making signatures appearing on petitions circulated by other than qualified electors void, means that the petitions are void only if, in fact, the circulator was not a qualified elector.

Having determined that the omission complained of is not fatal, we turn to the denial of the continuance problem: Could the referendum measure proposed by these petitions have been placed on the ballot for the next general election to be held on November 3, 1970? If so, then this court must consider the time limitations and pressures placed on the trial court in ascertaining whether he abused his discretion in denying the motion for continuance. In other words, when is the "next general election" as provided by Article IV, Part I, § 1(10) of the Arizona Constitution which states that initiative or referendum measures "shall . . . be printed on the official ballot at the *next regular general election* . . . ."?

In arriving at this determination it is necessary to take into consideration the various other constitutional provisions dealing with initiative and referendum measures, and if possible to give all such provisions effect, Kerby v. Griffin, 48 Ariz. 434, 62 P.2d 1131 (1936).

Subsection (4) of Article IV, Part 1, § 1 of the Constitution requires that all referendum petitions must be submitted to the Secretary of State "not more than ninety days after the final adjournment of the session of the Legislature which shall have passed the measure to which the Referendum is applied." In this case that date, because of the length of the legislative session, fell on August 11, 1970. Subsection (11) of the same constitutional provision further requires publication of all initiative and referendum measures in such manner as the Legislature may provide. The Legislature in carrying out this constitutional mandate, by A.R.S. § 19–124, provided that any person may file with the Secretary of State arguments advocating or opposing any referendum measure not later than sixty days preceding the regular primary election. Since 1970 was an election year, the regular primary election was held on September 8, 1970. In order to comply with this statutory provision, arguments pro and con on the referring of House Bill 102 would have had to be filed by July 10, 1970, or one month prior to the time the constitution required the petitions to be filed in the first instance.

In addition, A.R.S. § 19–123 requires that the Secretary of State cause to be printed a publicity pamphlet containing the text of the measure, the form in which it will appear on the ballot and the arguments for and against the measure. This pamphlet must be delivered to the board of supervisors ten days prior to the primary election. In this case this statutory requirement mandates that the pamphlet be printed and distributed by August 29, 1970, or thirteen days prior to the instant lawsuit being instituted.

From the foregoing, it is apparent that it would be impossible to comply with the

statutory provision dealing with publicity and still have this particular referendum measure voted upon at "the next general election", which chronologically would have fallen on November 3, 1970. Can these publicity provisions be dispensed with? In passing on this question the Arizona Supreme Court in Kerby v. Griffin, *supra*, stated:

> "But when the people are given the right and the duty of legislating directly, it is imperative, in order to secure wise legislation, that they be fully informed as to the nature and details of the measure upon which they are called to pass. We think, therefore, that the constitutional provision in regard to publicity *must be substantially followed or the proposed law cannot be legally adopted*." (Emphasis supplied.) 48 Ariz. at 447–448, 62 P.2d at 1137.

The *Kerby* court went on to hold that the predecessor of A.R.S. §§ 19–123 and 19–124 was constitutional and set the standards for compliance with the constitutional publicity provision.

◼ It therefore appears to the court that if a referendum measure cannot legally be adopted without compliance with the statutory requirements as to publicity, the "next general election" referred to in the Constitution means the next general election at which all the statutory requirements for publicity can be complied with, and we so hold. In this case, this would mean the regular general election to be held in November, 1972.

While our holding, because of Article 4, Part 1, § 1(5) of the Constitution, has the effect of suspending the operation of Bill 102 for approximately two years, we do not believe this delay is contrary to the intent of the original drafters of our Constitution. Our Constitution, as originally adopted, provided for biannual sessions of the Legislature, these legislative sessions to occur every other off-election year. *See,* original enactment of Article 4, Parts 2 and 3 of Arizona Constitution. Thus, referred legislation adopted during a regular session would be suspended from becoming operative until acted upon in November of the following year which would be the "next general election"—normally a period in excess of one and one-half years.

◼ Our holding that the election of November, 1972, is the "next general election" leads to the inescapable conclusion that under the circumstances of this case, the trial court should have allowed the appellants a continuance in order to supply, if possible, the proof as to the qualifications of the circulators of the petitions. We therefore hold that the court's failure to do so amounts to an abuse of discretion.

The court at this point adds parenthetically that whatever its personal feelings are concerning the wisdom of a particular referendum measure, these personal feelings cannot interfere with the constitutional right of citizens of this state to have legislation referred to the electorate for their approval or disapproval before it becomes effective.

Since our holding in this matter requires the granting of a new trial, the appellees should be given the opportunity, if they so desire to amend their petition to set forth any other matters which may affect the validity of the petitions filed by appellants.

Judgment reversed and the matter remanded for further proceedings not inconsistent with this opinion.

HAIRE, P. J., and EUBANK, J., concur.