503 P.2d 951

**DIRECT SELLERS ASSOCIATION of Arizona, and Frank Hoeschler, Appellants,**

v.

**Arthur McBRAYER, Maricopa County Legal Aid Society, in behalf of themselves and others similarly situated, Wesley Bolin, Secretary of State, State of Arizona, Appellees.**

No. 10858–PR.

Supreme Court of Arizona, In Banc.

Dec. 5, 1972.

Rehearing Denied Jan. 2, 1973.

**4**

Hughes, Hughes & Conlan by John C. Hughes, Phoenix, for appellants.

Estrada & Estrada by W. Clifford Girard, Jr., Phoenix, for appellee McBrayer.

Jerry Levine, Tempe, for appellee Maricopa County Legal Aid Society.

Gary K. Nelson, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee Wesley Bolin.

HAYS, Chief Justice.

This case comes to us on a petition to review the decision of the Court of Appeals in 16 Ariz.App. 231, 492 P.2d 727 (1972), which decision is vacated.

The case involves the constitutionality of the legislative enactments dealing with referendum measures and the legal sufficiency of referendum petitions lacking the verification required by A.R.S. §§ 19–112 and 19–114 that the circulator was a qualified elector of the State of Arizona.

During the second regular session of the 29th legislature, House Bill 102 (the Home Solicitation Act) was passed and subsequently signed into law by the governor. A.R.S. § 44–5001 et seq. This legislation regulated the direct selling of merchandise to the public in their homes and would have become effective ninety days following the adjournment of the legislative session in which it was passed—i. e., on August 11, 1970. On August 10, 1970, one day prior to the effective date of the Home Solicitation Act, Hoeschler and Direct Sellers Association (D.S.A.) filed petitions purportedly containing 30,000 signatures in an attempt to have the newly-enacted legislation placed on the ballot by way of referendum. Article 4, part 1, § 1, of the Arizona Constitution, A.R.S. On September 11, 1970, McBrayer and the Maricopa County Legal Aid Society filed a special action, seeking to have the petitions for referendum declared null and void because of an alleged failure to comply with the circulators' statutory affidavit forms and to enjoin the Secretary of State from placing the referendum measure on the ballot. D.S.A. and Hoeschler filed a motion to intervene and a cross-claim, the cross-claim alleging that the statutory time within which to allow arguments pro and con to the measure could not be met. A.R.S. §§ 19–123, 19–124. In addition, D.S.A. and Hoeschler alleged that the time necessary to prepare and distribute publicity pamphlets as required by article 4, part 1, § 1(10) of the Arizona Constitution could not be complied with before the "next regular general election" on November 3, 1970.

The Superior Court heard the matter on September 17, 1970, and granted D.S.A.'s motion to intervene. Hoeschler and D.S.A. moved for a continuance and objected to any testimony's being taken as they had not had an opportunity to prepare. These motions were denied. The only evidence presented was the affidavits of the circulators of the petitions and all parties stipulated that all of the affidavits lacked a certification that the circulator was "a qualified elector of the State of Arizona" as required by A.R.S. § 19–114. On the grounds that the petitions failed to comply with the statute, the trial court held that the referendum petitions were legally insufficient and enjoined the Secretary of State from putting the measure on the ballot.

The Court of Appeals rejected D.S.A.'s and Hoeschler's argument that since the requirement that a circulator of referendum petitions be "a qualified elector of the State of Arizona" is not a constitutional provision and since the constitutional referendum provisions are self-executing, the legislature may not add a requirement that is not contained in the constitution itself. The court then found that the failure to include the circulator's affidavit did not make the petitions null and void but merely destroyed the presumption of validity, a presumption which could be reinstated on proof that the circulators were in fact qualified electors. The Court of Appeals held "that if a referendum measure cannot

legally be adopted without compliance with the statutory requirements as to publicity, the 'next general election' referred to in the Constitution means the next general election at which all the statutory requirements for publicity can be complied with." 16 Ariz.App. at 237, 492 P.2d at 733. In this case, the court found that the next general election meant the November, 1972, election, since Hoeschler and D.S.A. could not possibly have complied with the publication requirements after the September 17, 1970, hearing but before the November 3, 1970, general election. The court found that since the next general election was November, 1972, the trial court's failure to grant D.S.A.'s continuance in order to attempt to supply proof that the circulators were qualified electors was an abuse of discretion. In accordance with these holdings, it reversed and remanded the matter to the trial court.

In reviewing the decision of the Court of Appeals, we are, in essence, asked two questions: (1) Is the requirement of A.R.S. § 19–112 that a circulator of a referendum petition be a qualified elector invalid in that it adds a qualification to a self-executing constitutional provision? (2) Did the omission in the affidavit of verification that the circulator was a qualified elector of the State of Arizona make the petitions void under A.R.S. § 19–112?

We must disagree with Hoeschler's and D.S.A.'s contention that since the referendum provisions of the Arizona Constitution are self-executing, the legislature may not add the requirement that the circulator be a "qualified elector of the State of Arizona." We hold that the fact that a constitutional provision is self-executing does not forever bar legislation on the subject. If such legislation does not unreasonably hinder or restrict the constitutional provision and if the legislation reasonably supplements the constitutional purpose, then the legislation may stand. Fry v. Mayor and City Council of Sierra Vista, 11 Ariz.App. 490, 466 P.2d 41

(1970). In the instant case, we agree with the holding of the Court of Appeals that the requirement that circulators of referendum petitions be qualified electors is a valid exercise of legislative power.

In answer to the second question, we hold that the failure to include the words, "a qualified elector of the State of Arizona," in the circulator's affidavit does not make the signatures appearing on the petitions null and void, but merely destroys their presumption of validity, which presumption may be reinstated on proof that the circulators were in fact qualified electors. We disagree with the assertion that D.S.A. and Hoeschler can come in *after* the 90-day period and amend their petitions to comply with the verification provision. Under the Arizona Constitution, a law passed by the legislature goes into effect 90 days after the end of the legislative session in which it was enacted, unless before that time has elapsed, the electorate takes affirmative action to have it suspended and referred to the people for their vote. The filing for a referendum is analogous in many respects to the exercise of the veto power and, like a veto power, it must be exercised within a limited time or the legislation goes into effect. On this point, we adopt the reasoning of the court in AAD Temple Bldg. Ass'n v. Duluth, 135 Minn. 221, 160 N.W. 682 (1916):

"The right to suspend, and possibly to revoke, as given by the referendum . . . is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction. It must be confined within the reasonable limits fixed by the charter [statute]. The charter [statute] prescribes what the petition for referendum shall contain, how it shall be signed, and by whom it shall be verified. These provisions are intended to guard the integrity both of the proceeding and of the petition. Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided

**6**

by law against its irregular or fraudulent exercise should be carefully maintained." 135 Minn. at 226–227, 160 N.W. at 684–685.

We know from the Declaration of Purpose of the House Bill in 1953 that the Arizona Legislature, in enacting A.R.S. § 19–112 (requiring the affidavit), was also concerned with individuals who sought to abuse initiative and referendum petitions.

"In recent years small pressure groups, taking advantage of the substantial increase in the size of the electorate and the resultant great numbers of uninformed signers of initiative and referendum petitions, have attempted, through fraudulent and corrupt practices in connection with the circulation of petitions, to appropriate this fundamental right of the people to their own selfish purposes. These abuses have tended to bring the initiative and referendum processes into disrepute. It is the sense of this legislature that in order to prevent the recurrence of such abuses and to safeguard to the people their right of initiative and referendum in its original concept, legislation should be enacted further implementing the provisions of the Constitution governing the exercise of that right." Ch. 82, Ariz.Sess.Laws, (House Bill 167) (1953).

We do not hold that referendum petitions cannot be amended within the 90-day period. We hold only that once the 90-day period has run, the power to petition to have the legislation referred has lapsed and the law will go into effect. To hold otherwise would allow a small minority of voters to present a protest to the passage of a law (in this case on the 89th day after the close of the legislative session), have that protest found insufficient, file amendments, have those found insufficient, and in this obstructive manner prevent a law from going into effect for any number of years after its enactment.

For the above reasons, we vacate the decision of the Court of Appeals and reinstate the judgment of the trial judge, holding the petitions legally insufficient and enjoining the Secretary of State from putting the matter on the ballot.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.