811 P.2d 22

PIONEER TRUST COMPANY OF ARIZONA, an Arizona corporation, in its capacity as Trustee of its Trust No. 11,960, Plaintiff/Appellant,

v.

PIMA COUNTY, a political subdivision of the State of Arizona; Daniel Eckstrom, Raul Grijalva, Greg Lunn, Ed Moore, and Reg Morrison, in their capacities as members of and constituting the Pima County Board of Supervisors; Jane S. Williams, in her capacity as Clerk of the Pima County Board of Supervisors; Larry Bahill, in his capacity as the Director of Elections for Pima County; and Mike Boyd, in his capacity as the Pima County Recorder; Concerned Voters Council, Inc., an Arizona corporation; and Gayle G. Hartmann, an individual, Defendants/Appellees.

No. CV–90–0348–AP.

Supreme Court of Arizona, En Banc.

May 9, 1991.

---

Robert A. Fortuno, P.C. by Robert A. Fortuno, Tucson, for plaintiff/appellant Pioneer Trust Co. of Arizona.

Stephen D. Neely, Pima County Atty. by Peter E. Pearman and Christopher L. Straub, Deputy County Attys., for Pima County, Daniel Eckstrom, Raul Grijalva, and Greg Lunn.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by K. Alexander Hobson, Tucson, for Concerned Voters Council, Inc.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

In this direct appeal, we affirm the superior court's judgment upholding the timeliness and legal sufficiency of a referendum petition challenging a county's conditional approval of rezoning. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 19–122(C) and 19–144.

### FACTS

Appellant Pioneer Trust Company of Arizona (the Owner) filed an application to rezone approximately seventy-four acres of land it owns in Pima County. The land was zoned SR (suburban ranch). On June 5, 1990, the Pima County Board of Supervisors (Board) conditionally approved a portion of the Owner's request, authorizing the rezoning of some of the property to MR (major resort) and some to RVC (rural village center). The approval of the MR and RVC rezonings was subject to twenty-four standard and special conditions. The Board denied the Owner's request to rezone the remaining thirteen acres of the property to CB–1 (commercial-business).

Two weeks later, however, on June 19, 1990, the Board voted to reconsider its earlier decision denying a portion of the requested rezoning, reversed itself, and conditionally approved the rezoning of the remaining thirteen acres to CB–1. This rezoning was subject to the same twenty-four conditions previously imposed with respect to the MR and RVC rezonings plus three additional special conditions imposed only on the CB–1 rezoning. The referendum petitions challenged in this case relate only to the Board's June 19 approval of the CB–1 rezoning.

On June 26, 1990, the Board formally approved the minutes of the June 19 meeting in which the CB–1 rezoning had been granted. On the same day, Gayle Hartmann, a member of the Board of Directors of the real party in interest, appellee Concerned Voters Council, Inc. (the Challengers), obtained from the clerk of the Board a certified copy of the extract of the minutes of the June 19 Board meeting. Also on June 26, Ms. Hartmann, acting on behalf of the Challengers, filed an application with the Division of Elections for a referendum number and received referendum No. 3–RPC–90. No referendum petitions with this number were ever filed, however.

On July 3, 1990, the Board formally approved the minutes of the June 5 meeting, at which they had originally denied the requested CB–1 rezoning. On the same day, Ms. Hartmann obtained a copy of the June 5 minutes. Believing that the minutes of the June 19 meeting alone did not constitute a full and correct copy of the Board's action and that the minutes of the June 5 meeting needed to be attached to the referendum petitions, Ms. Hartmann filed a second application on behalf of the Challengers with the Division of Elections and received Referendum No. 4–RPC–90. Referendum petitions were circulated under this number with extracts of minutes of both the June 5 and June 19 Board meetings, together with the title page and approximately one-half of the Owner's site analysis of the property.

On July 25, 1990, the Challengers delivered a number of signature sheets bearing

referendum serial No. 4–RPC–90 to the Division of Elections. This date, July 25, was within thirty days of the Board's formal approval of the minutes, but more than thirty days after the Board's action in conditionally approving the rezoning. It is undisputed that the petitions contained sufficient signatures to place the referendum issue on the ballot if the petitions are timely and otherwise valid.

The June 5 and June 19 meetings were taped and copies of the tapes were available a day or two after each meeting, but the Challengers did not request or receive copies of the tapes. The June 19 motion to approve the CB–1 zoning included a verbal recital of the three additional special conditions. The twenty-four standard and special conditions were not verbally recited at the June 19 Board meeting, but were included in the minutes of the meeting.

 The Owner filed this action in Pima County Superior Court on July 31, 1990, seeking to enjoin Pima County from placing the referendum on the ballot. After a hearing, the trial court denied relief by final judgment entered on September 6, 1990. The Owner filed its direct appeal with this court the same day judgment was entered.[1] After accelerated briefing and oral argument, we issued an order on September 20, 1990, affirming the trial court's decision. That order permitted the election to proceed on schedule and stated that a formal opinion would follow. This is that opinion.

## QUESTIONS PRESENTED

1. Whether the Board's conditional approval of the Owner's application to rezone is a proper subject for referendum, or whether the Challengers must wait and challenge the final zoning ordinance when and if one is adopted.

2. Whether the referendum petitions were invalid because extraneous material was attached to them.

3. Whether the referendum petitions were timely filed under A.R.S. § 19–142.

## DISCUSSION

### I. Referability of the Board's Conditional Approval of the Rezoning Application

 We have previously held that zoning decisions are legislative in character. *Wait v. City of Scottsdale*, 127 Ariz. 107, 108, 618 P.2d 601, 602 (1984). As such, zoning decisions have been considered proper subjects of referenda in Arizona. *Queen Creek Land & Cattle Corp. v. Yavapai County Bd. of Supervisors*, 108 Ariz. 449, 501 P.2d 391 (1972); *see also Cottonwood Dev. v. Foothills Area Coalition*, 134 Ariz. 46, 653 P.2d 694 (1982). The Owner asks us to re-examine our rule permitting referenda on zoning matters, citing primarily out-of-state authorities in support of its position. We are not persuaded that any adequate reason has been demonstrated to overrule our earlier cases. We begin our analysis, then, with the proposition that, in Arizona, zoning decisions are legislative acts subject to referendum.

 This case, however, presents a question never expressly addressed in Arizona. That question is whether the Board's conditional approval of an application to rezone is the legislative act that triggers the right to seek a referendum, or whether a challenger must wait until enactment of the rezoning ordinance itself.

A.R.S. § 11–832 authorizes counties to approve a conditional zoning change. Pima

---

1. Whether this appeal could properly have been filed in the court of appeals is an issue not raised or briefed by the parties. Therefore, under the circumstances of this case, we do not consider it. *But see Direct Sellers Ass'n v. McBrayer*, 16 Ariz.App. 231, 492 P.2d 727 (court of appeals heard appeal arising from trial court's judgment that referendum petitions were insufficient), *vacated,* 109 Ariz. 3, 503 P.2d 951 (1972) (on petition for review); *Turley v. Bolin*, 27 Ariz.App. 345, 554 P.2d 1288 (1976) (court of appeals heard appeal from trial court's judgment refusing to enjoin Secretary of State from placing initiative measure on ballot). *See also* Freeman & Ulrich, *Arizona Civil Appellate Procedure—An Update,* 1983 Ariz.St.L.J. 483, 496 & n. 99 (1983) (legislature's establishment of court of appeals and its jurisdiction generally understood to impliedly amend statutes enacted before the court of appeals was created that provide for direct appeal to the supreme court).

County Zoning Code § 18.91.080(C)(2) provides for conditional approval of rezoning requests. If the Board grants a request for conditional approval, rezoning is subject to the satisfaction of all rezoning conditions and to the adoption of a rezoning ordinance. Pima County Zoning Code § 18.91.080(C)(2). After conditional approval, the Board may adopt a rezoning ordinance only when "all rezoning conditions have been satisfied, as documented in writing by the planning and development services department." Pima County Zoning Code § 18.91.090(A)(1). The Board may impose additional conditions after the conditional approval, but only after public hearings and only when "such additions are determined necessary for the public safety or welfare." Pima County Zoning Code § 18.91.090(A)(2).

The Owner argues that the Board's conditional approval was not a legislative act and thus not subject to referendum. We disagree. Article 4, part 1, § 1(8) of the Arizona Constitution provides that a referendum may be held in response to county legislative enactments. A.R.S. § 19–144 provides for a referendum when a county board of supervisors passes an "ordinance, franchise or resolution." The record indicates the Board's decision to conditionally approve the rezoning was in the form of an informal resolution or "action." This decision, though by informal resolution, may still constitute a legislative enactment.

■ In *Wait*, this court held that the City of Scottsdale's decision to rezone was a legislative act. 127 Ariz. at 108, 618 P.2d at 602. The form of the decision to rezone was not specified in the opinion. If form alone were to govern, a Board could exempt its legislative action from referendum simply by labeling the action as something other than an ordinance, franchise or resolution.

■ Looking at the matter realistically, the Board's conditional approval of the rezoning was a legislative act. At that point, the decision had been made. The Board had decided that it would rezone the land in question when the Owner met the stated conditions. The Board cannot add to or modify those conditions after the conditional rezoning approval without holding new public hearings. Any such additions or modifications must be proven necessary to the public safety or welfare. The Planning and Development Services Department determines whether the Owner has complied with the conditions. Pima County Zoning Code § 18.91.090(A)(1). Thereafter, the Board's only remaining task is to enact a formal ordinance changing the zoning. Determining compliance with the conditions and enacting the formal ordinance are both essentially ministerial acts that implement the policy previously set by the Board. *See Lincoln Prop. Co. No. 41 v. Law*, 119 Cal.Rptr. 292, 45 Cal.App.3d 230 (1975) (acts declaring public purpose and making provisions for ways and means of its accomplishment generally classified as legislative; acts necessary to carry out the legislative policies and purposes already declared by legislative body are administrative).

The Owner relies heavily on *Citizens for Orderly Dev. & Env't v. City of Phoenix*, 112 Ariz. 258, 540 P.2d 1239 (1975), for the proposition that a conditional approval of rezoning is not a legislative act, and that only the adoption of a final zoning ordinance constitutes a legislative act. The Owner argues that *Citizens* rejected the "ministerial act" analysis.

At first blush, *Citizens* appears to support the Owner's argument. Upon closer examination, however, *Citizens* is distinguishable. *Citizens* was not a referendum case, but was a case in which a party sought judicial review of a city's conditional approval of a rezoning application. We held that the case was not ripe for judicial review, and that the courts would not enjoin the city from enacting the final zoning ordinance. *Citizens*, 112 Ariz. at 260–61, 540 P.2d at 1241–42. Thus, *Citizens* held only that the *judiciary* should not intervene in the legislative process. *See also City of Phoenix v. Superior Court*, 65 Ariz. 139, 144, 175 P.2d 811, 816 (1946); *Queen Creek*, 108 Ariz. at 451–52, 501 P.2d at 393–94. Essentially, *Citizens* is an example of the exercise of judicial discretion

in favor of abstention as is made clear by the following passage:

> While it might be sophistically argued that since the City Council has expressed its intention of granting the rezoning, there is no reason *for courts* to await the ministerial function of formalization of that intent before acting. Sidestepping the possibility that the rezoning applicants in this case may not accept the conditions imposed by the City for granting rezoning and thus no formal action will be taken which would require judicial review, *the dangers inherent in litigants involving the courts in judicial meddling with the legislative process are so constitutionally and practically fraught with peril that the policy of judicial abstention must be adhered to* even though the legislative expression to act in a certain manner is abundantly clear.

*Citizens,* 112 Ariz. at 260–61, 540 P.2d at 1241–42 (emphasis added).

We do not believe *Citizens* provides guidance concerning the appropriate time at which legislative matters may be referred to the people. The case at bar involves neither a request for judicial intervention in the legislative process nor issues of separation of powers. Rather, it is a case of legislative review *by the people,* an action that the Arizona Constitution and statutes strongly encourage. *See Queen Creek,* 108 Ariz. 449, 501 P.2d 391 (constitutional reservation of initiative and referendum powers establishes electorate as coordinate source of legislation with constituted legislative bodies); *Whitman v. Moore,* 59 Ariz. 211, 218, 125 P.2d 445, 452 (1942) (question of whether Arizona's constitution should reserve powers of initiative and referendum was "burning issue"; opinion of delegates who adopted and signed constitution was that powers of initiative and referendum were among the constitution's most important provisions), *overruled twice on other grounds, Renck v. Superior Court,* 66 Ariz. 320, 187 P.2d 656 (1947); *Brousseau v. Fitzgerald,* 138 Ariz. 453, 675 P.2d 713 (1984); *see also* Leshy, *The Making of the Arizona Constitution,* 20 Ariz.St.L.J. 1, 104–07 (1988) (framers included rights of referendum and initiative despite warning that inclusion might jeopardize chances for statehood). *Citizens* does not hold that a conditional approval is not a legislative act, nor does it hold that only the adoption of a zoning ordinance is a legislative act.

We also believe that the logical and practical time for a referendum is when the rezoning is conditionally approved. This is shortly after the contested proceedings and public hearings, and is usually before the legislative members leave office through expiration of terms or elections. It is also before owners, developers, and lenders expend huge sums of money to comply with the conditions.

Adopting the time of conditional rezoning as the triggering time for a referendum also provides a bright-line rule easily ascertainable by all interested parties. If enactment of the final zoning ordinance were the triggering mechanism, parties would be required to make repeated checks to determine whether the Board has enacted the final zoning ordinance. Thus, practical as well as legal considerations lead us to conclude that conditional approval of rezoning is a referable legislative act.

Having determined that conditional approval of rezoning is subject to referendum, we now proceed to discuss the Owner's challenges to the validity and timeliness of the referendum petitions in this particular case.

## II. The Effect of the Extraneous Material Attached to the Referendum Petitions

Both article 4, part 1, § 1(9) of the Arizona Constitution and A.R.S. § 19–121(A)(3) require that a full and correct copy of the title and text of the measure to be referred accompany signature sheets for referenda. The Owner argues that these provisions were violated because the Challengers included additional material with the petition. The material complained of consists of a ten-page extract of the June 19 minutes, a fifteen-page extract of the June 5 minutes, and the title page and forty-two pages of the Owner's site analysis.

The Challengers explain that they attached the site analysis pages "to give illustration to the bare text of the Board's action," and that they added the June 5 and June 19 excerpts to more fully explain what the Board did on June 19 when it reconsidered and reversed its actions of June 5. The Owner argues that attaching the June 19 extract, which included the arguments of two dissenting supervisors, rendered the material one-sided and prejudicial. They also contend that the inclusion of the June 5 extract and a portion of the site analysis was confusing and misleading.

The trial court first found that the June 19 minutes included a clear indication of the Board's conditional approval of the rezoning and that attaching excerpts of the June 19 minutes satisfied "the constitutional requirement that 'a full and correct copy of the title and text of the measure' be attached to each signature page." The court next found that other parts of the June 19 excerpts contained "extraneous, incomplete and confusing matters which render it difficult to determine" the Board's precise action. The court also found that the other attachments to the referendum petition "rende[r] an examination of the attached materials confusing, time consuming and of little or no benefit to a petition signer...." Nonetheless, the court held that the excess material did not invalidate the petitions.

█ The June 19 minutes contained the information, indeed, the precise language of the motion, necessary to understand that the Board had conditionally approved the Owner's application to rezone. As we suggested in *Cottonwood*, attaching the portion of the Board's minutes that contains the action taken by the Board satisfies constitutional and statutory requirements. Therefore, the trial court correctly concluded that the Challengers complied with article 4, part 1, § 1(9) of the Arizona Constitution and A.R.S. § 19–121(A)(3).

█ We also agree with the trial court's conclusion that the surplus materials attached to the petitions did not negate the Challengers' compliance with constitutional and statutory requirements. Absent constitutional or statutory proscription of such surplusage, we choose not to silence the voice of the people because of it. *See Ingram v. Shumway*, 164 Ariz. 514, 519, 794 P.2d 147, 152 (1990) ("Election, the ultimate weapon of democracy, is favored where any doubt exists.").

In *Tilson v. Mofford*, we refused to remove from the ballot an initiative measure amending the constitution even though its title and wording did not indicate its potential effect on other portions of the constitution. 153 Ariz. 468, 472–73, 737 P.2d 1367, 1371–72 (1987). Vice Chief Justice Feldman, concurring in the majority opinion wrote:

> Believing, with the court, that the democratic process requires questions of fairness in drafting to be resolved first by the electorate rather than the judiciary, I concur in the holding that *the judicial branch has no power to keep the proposal off the ballot simply because we might believe the matter has not been submitted to the people in a fair form.*

*Id.* at 473, 737 P.2d at 1372 (emphasis added).

We believe this reasoning is equally applicable here. A full and correct copy of the measure to be referred was attached to the petition. The inclusion of some surplus material does not justify depriving Pima County voters of their opportunity to be heard.

## III. Timeliness of the Petitions

The Owner argues that the July 25, 1990, filing was not timely. A.R.S. § 19–142(A) requires that referendum petitions be filed within thirty days after passage of the challenged ordinance, resolution, or franchise. Because the Board approved the conditional rezoning on June 19, the Owner argues that the last day for filing the petitions was July 19.

A.R.S. § 19–142(C), however, permits additional time to file petitions under certain circumstances. The parties dispute its applicability. Section 19–142(C) provides:

> At the time a person or organization intending to file a referendum petition

against an ordinance or resolution applies for the issuance of an official number pursuant to § 19–111, the city or town clerk shall provide such person or organization with a full and correct copy of the ordinance or resolution in the form as finally adopted. If a copy of the ordinance or resolution proposed as a referendum is not available to such person or organization at the time of making application for an official number or on the same business day as the application is submitted, the thirty-day period specified in subsection (A) begins on the day that the ordinance or resolution is available from the city or town clerk, and the ordinance or resolution shall not become operative until thirty days after the ordinance or resolution is available.

The Owner argues that the extension of time provided for in § 19–142(C) does not apply here because a copy of the Board's action was available when the Challengers filed their applications for referendum numbers on June 26 and on July 3. Thus, the Owner contends that § 19–142(C) provides no extension and that the thirty-day period began to run on June 19, the date of the conditional approval of the rezoning, even though the minutes were not approved and available until June 26. The Challengers, on the other hand, contend that they had thirty days from June 26 within which to file.

Because of the wording of A.R.S. § 19–142(C), the Owner's argument has a patina of technical merit. But to read A.R.S. § 19–142(C) so rigorously would run counter to the whole thrust of Arizona's constitutional and statutory scheme relative to referenda. Indeed, such a rigorous application of the statute would call into question its constitutionality.

In *Cottonwood*, this court held that referendum petitions without a full and correct copy of the matter to be referred attached to them did not comply with article 4, part 1, § 1(9) of the Arizona Constitution and A.R.S. § 19–121(A)(3). In so holding, we stated: "At a minimum, that portion of the minutes of the board of supervisors that contained the resolution and the amendments thereto would have met the requirement of the constitution and statute requiring a copy of the measure referred." *Cottonwood*, 134 Ariz. at 49, 653 P.2d at 697.

The Board must approve the minutes of its meetings within one month. *See* A.R.S. § 11–217. The referendum statutes, taken as a whole, contemplate a thirty-day period for challengers to file referendum petitions. If the Owner's argument is accepted, however, the governing body could effectively shorten that thirty-day period by delaying approval of the minutes. Under the Owner's argument, the "clock was running" starting June 19, although the Challengers were powerless to proceed with referendum procedures until June 26. Notwithstanding the wording of § 19–142(C), we do not believe the legislature intended such an absurd result, even assuming such a result would pass muster under the Arizona Constitution. *See, e.g., Gortarez v. Smitty's Super Valu, Inc.,* 140 Ariz. 97, 103, 680 P.2d 807, 813 (1984) (court will adopt interpretation of a statute that "is reasonable and avoids contradictions or absurdities").

Evidence adduced at trial clearly showed that a full and correct copy of the Board's June 19 action was unavailable until June 26 when the Board approved the June 19 minutes. Until June 26, the clerk of the Board could not provide a full and correct copy of the Board's action to any party. The clerk testified that she would not have released an unapproved copy of the minutes to anyone interested in referring the matter before June 26.

The Owner also argues that the thirty-day period began before the minutes were approved because a "transcript" of the Board's action, in the form of a tape, was available on June 19 or 20. The Owner relies on *Cottonwood* for the proposition that a transcript of the Board's action containing the precise language of the measure satisfies the constitutional and statutory requirements of a full and correct copy of the measure to be referred. However, the clerk of the Board testified that she would not have certified either the tape

or a transcription of the tape as official minutes. The minutes were subject to amendment until the Board approved them.

The tape had not been approved by the Board. On the tape, which is in evidence, several people often speak at the same time, maps and diagrams are utilized to illustrate, and individual speakers are often not identified before they speak. To require the Challengers to attempt to prepare an accurate transcript from the tape to use as the basis of a referendum petition is unrealistic, unfair, and would doubtless lead to additional challenges to the adequacy of the petitions. We also note that the first twenty-four conditions of the rezoning were not even verbally recited at the June 19 meeting. Thus, the Challengers also would have had to obtain a staff report that contained the first twenty-four conditions to obtain all twenty-seven conditions of the approved CB–1 rezoning. We agree with the trial court that the tape is not a "transcript" of the Board's action within the meaning of *Cottonwood*. We therefore agree with the trial court that neither the minutes nor an adequate transcript were available until the minutes were approved on June 26, and hold that the July 25 filing was timely.

## DISPOSITION

The Board's conditional approval of rezoning was a legislative act subject to referendum. The referendum petitions were timely and valid. Accordingly, we affirm the judgment of the trial court.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.