814 P.2d 767

**WESTERN DEVCOR, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**CITY OF SCOTTSDALE, a municipal corporation; Mark G. Massie, in his capacity as City Clerk, for City of Scottsdale; Helen Purcell, in her capacity as Maricopa County Recorder; and Maricopa County, a body politic, Defendants/Appellees,**

**Kenneth Pinckard, Guy Williams, Jr., Nancy Klein, Harmon C. Anderson, Nancy Campbell, and Susan W. Jones, Defendants/Intervenors/Appellees.**

**No. CV–91–0116–AP.**

Supreme Court of Arizona, En Banc.

July 11, 1991.

Beus, Gilbert & Morrill by Paul E. Gilbert, J. Tyrrell Taber, and Jeffrey D. Gross, Phoenix, for plaintiff/appellant.

Richard W. Garnett, III, City Atty. by Fredda J. Bisman, Deputy City Atty., Scottsdale, for City of Scottsdale.

Richard M. Romley, Maricopa County Atty. by Christina P. Sargeant, Deputy County Atty., Phoenix, for Maricopa County.

Gil Shaw, Phoenix, for defendants/intervenors/appellees.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

Plaintiff Western Devcor (Owner [1]) challenged the sufficiency of referendum petitions and appeals the trial court's judgment upholding the validity of the petitions and permitting a referendum election. We have jurisdiction of this appeal pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 19–122(C), 19–121.03, and 19–141(C).[2]

### FACTS

On December 4, 1990, the Scottsdale City Council unanimously approved the rezoning of Owner's property at the corner of Pima Road and Shea Boulevard. On January 11, 1991, Intervenors [3] filed referendum petitions seeking to refer the council's decision

---

1. Title to the property involved in this case is apparently held by Pima and Shea Centers, Inc. (Pima), a corporation related to the plaintiff corporation. Plaintiff moved to amend the complaint to substitute Pima as the plaintiff, but the motion was not ruled upon before judgment was rendered.

2. As we recently noted in *Pioneer Trust Co. v. Pima County,* 168 Ariz. 61, 64 n. 1, 811 P.2d 22, 25 n. 1 (1991), it is possible that the court of appeals also has appellate jurisdiction in referendum cases.

3. The trial court permitted the referendum organizers to intervene as defendants in this action. Intervenors are the only defendants actively opposing Owner's action.

to the voters. Owner filed this case the same day, seeking to prevent the referendum. Owner's complaint presented several allegations: (1) the referendum was premature, (2) the referendum petitions were invalid on two separate grounds, (3) the random sampling method of A.R.S. § 19–121.02(A) is unconstitutional, and (4) the signatures on the petitions were invalid.

The trial court temporarily stayed the proceedings pending certification of the signatures obtained from the random sample required by A.R.S. § 19–121.02(A). In a January 25, 1991, letter, the Scottsdale City Clerk reported that the Maricopa County Recorder had determined that 14.2% of the signatures in the random sample were invalid. Based on projections from the sample, the clerk certified that a sufficient number of valid signatures existed.

At a status conference in the trial court, Owner dropped all counts of its complaint except its challenge to the validity of the referendum petitions. In a motion for summary judgment, Owner argued that the referendum petitions were invalid because they bore an inadequate title and because the circulators' affidavits did not state that the circulators believed the signers to be qualified electors of the City of Scottsdale. On March 5, 1991, the trial court ruled that the referendum petitions were sufficient and that the matter should be submitted to the city's voters. The transcript of the proceeding indicates that the trial court believed that the clerk's certification that the referendum petitions contained a sufficient number of signatures cured the defect in the circulators' affidavits. The trial court also considered the fact that each signature page contained a statement attributable to the signers to the effect that the signers were qualified electors of the City of Scottsdale.

The trial court entered judgment in favor of Intervenors and the other defendants, and Owner appealed. Following accelerated briefing, this court heard oral argument on April 9, 1991. On April 10, we ruled, by order, that the referendum peti-

tions were insufficient under the Arizona Constitution. Accordingly, we reversed the trial court's judgment, directed it to enter judgment in favor of Owner, and stated that a written opinion would follow. This is that opinion.

## ISSUE PRESENTED

Whether referendum petitions seeking to refer a legislative act of the Scottsdale City Council are invalid because they do not contain circulators' affidavits swearing that the circulators believe that each petition signer was a qualified elector of the City of Scottsdale.

## DISCUSSION

I. Constitutional and Statutory Requirements for Referenda Must be Strictly Followed

The Arizona Constitution reserves to qualified electors a role in the legislative process via initiative and referendum procedures. Ariz. Const. art. 4, pt. 1, § 1. The Legislature itself may also refer proposed legislation to the electorate. *Id.*, § 1(3). Referral by the Legislature is a separate process not addressed in this opinion, which deals only with voter-initiated referenda.

■ Throughout the years, and most recently in *Pioneer Trust Co. v. Pima County*, we have recognized Arizona's strong public policy favoring the initiative and referendum. 168 Ariz. 61, 66, 811 P.2d 22, 27 (1991). In cases challenging compliance with constitutional and statutory requirements, however, we have distinguished between these two forms of participation in the legislative process. We permit substantial compliance in the initiative context, *Kromko v. Superior Court*, 168 Ariz. 51, 58, 811 P.2d 12, 19 (1991), but require strict compliance in the referendum context. *Cottonwood Dev. v. Foothills Area Coalition*, 134 Ariz. 46, 48–49, 653 P.2d 694, 696–97 (1982); *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 6, 503 P.2d 951, 954 (1972).

We base this distinction on the difference between the two processes. An initiative allows qualified electors to submit legisla-

tion to the voters; a referendum allows qualified electors to refer to the voters legislation that has already been enacted by elected representatives. *Cottonwood*, 134 Ariz. at 48, 653 P.2d at 696. Because the referendum is an "extraordinary" power, *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953, that permits a "minority to hold up the effective date of legislation which may well represent the wishes of the majority," we require referendum proponents to comply strictly with applicable constitutional and statutory provisions. *Cottonwood*, 134 Ariz. at 49, 653 P.2d at 697. Thus, while recognizing the historical importance of the referendum to our state, we have required strict compliance to ensure that the constitutional right is not abused or improperly expanded. *Id.* at 48, 653 P.2d at 696; *see also Direct Sellers*, 109 Ariz. at 6, 503 P.2d at 954. Accordingly, courts must closely examine referendum petitions to determine whether they comply with constitutional and statutory requirements.

## II. The Referendum Petitions Do Not Comply With Constitutional and Statutory Requirements

■ Article 4, pt. 1, § 1(9) of the Arizona Constitution requires that every referendum petition sheet shall contain the affidavit of the circulators verifying that:

> [E]ach of the names ... was signed in the presence of the affiant and that in the belief of the affiant each signer was a qualified elector of the State, *or in the case of a city*, town, or county *measure, of the city*, town, or county *affected by the measure so proposed to be initiated or referred to the people.*

(emphasis added). A.R.S. § 19–112(B) tracks the constitutional provision and requires that the circulator's affidavit verify the circulator's belief that: "each signer was a qualified elector of a certain county of the state, *or, in the case of a city*, town or county *measure, of the city*, town or county *affected by the measure* on the date indicated." (emphasis added). In this case, the petitions sought to refer a legislative act *of the City of Scottsdale*, but the affidavits state that the circulators believed the signers were qualified electors *of the State of Arizona.* The circulators' affidavits, therefore, failed to state, as both art. 4, pt. 1, § 1(9) and A.R.S. § 19–112(B) specifically require, that the circulators believed each signer to be a qualified elector *of the City of Scottsdale.*

Because the law requires strict compliance with constitutional and statutory requirements for referenda, and because the referendum petitions in this case do not strictly comply, we must turn next to Intervenors' arguments that the referendum should be allowed to proceed despite the lack of strict compliance.

## III. The Facts Do Not Excuse Lack of Strict Compliance

### A. Reliance on Statutes and Forms

Intervenors attempt to justify their failure to comply with the constitutional and statutory requirements by claiming they faced a "Catch 22" situation because a conflict exists between the constitutional requirements of Ariz. Const. art. 4, pt. 1, § 1(9) and the statutory requirements of A.R.S. § 19–112(C).[4] As previously noted,

---

4. A.R.S. § 19–112(C) provides:
The affidavit shall be in the following form printed on the reverse side of each signature sheet:
Affidavit of Circulator

State of Arizona )
 ) ss:
County of _____)

I, (print name), a qualified elector in the _____ precinct, county of _____, in the state of Arizona, under the penalty of a class 1 misdemeanor, depose and say that each signed this sheet of the foregoing petition in my presence on the date indicated, and I believe that each signer's name, residence address or post office address are correctly stated, and that each signer is a qualified elector of the state of Arizona.

(Signature of affiant) _____

art. 4, pt. 1, § 1(9) requires the circulator's verification that the circulator believes the petition signers are qualified electors of the City of Scottsdale. Section 19–112(C) states that the circulator's affidavit "shall be in the following form," and the illustrated form's contents verify that the circulator believes "each signer is a qualified elector of the state of Arizona." Thus, Intervenors argue that they were faced with a "judgment call" and chose to follow the "mandatory" language of § 19–112(C) instead of the language in Ariz. Const. art. 4, pt. 1, § 1(9).

Intervenors also point out that the Secretary of State's sample petition form is in error. This sample petition form contains parenthetical information on the signature page indicating appropriate places to insert a city's name. The circulator's affidavit located on the back side of the sample petition form, however, does not contain any parenthetical information indicating that a city's name should be inserted instead of "the State of Arizona."

Intervenors, citing the "conflict" between constitutional and statutory provisions and the "error" in the Secretary of state's sample petition form, essentially ask this court to overlook their petitions' constitutional infirmity. We cannot.

For several reasons, we do not believe that Intervenors' decision to follow the form in § 19–112(C), if it was a conscious decision, can excuse the failure to follow the constitution. First, no true conflict exists. Section 19–112(C) illustrates the proper *form* for a circulator's affidavit in a state referendum. Section 19–112(B), consistent with art. 4, pt. 1, § 1(9), requires

that the *contents* of the circulator's affidavit vary depending upon what type of measure is being referred:

> The person before whom the signatures and addresses were written on the signature sheet shall on the affidavit form pursuant to this section, subscribe and swear before a notary public, that each of the names on the sheet was signed and the name and address was printed in the presence of the elector and the circulator on the date indicated, and that in his belief each signer was a qualified elector of a certain county of the state, *or, in the case of a city, town or county measure, of the city, town or county **affected** by the measure* on the date indicated.

(emphasis added). Section 19–112(B) and art. 4, pt. 1, § 1(9) both require that the circulator's affidavit verify the circulator's belief that the petition signers were qualified electors of the *city* "affected by" the referendum measure. No conflict exists between art. 4, pt. 1, § 1(9) and A.R.S. § 19–112(C) because the latter merely illustrates the proper *form* of a circulator's affidavit. Both A.R.S. § 19–112(B) and art. 4, pt. 1, § 1(9) dictate the proper *contents*, and both require a verification that is lacking here.

■ Second, even assuming that a conflict does exist, there can be only one choice when a statute conflicts with the constitution. "The constitution of this state, second only to the constitution of the United States, is the supreme law of Arizona. Any act of the legislature passed before or after its adoption which contravenes its provisions must fall." *Miller v. Heller*, 68 Ariz. 352, 357, 206 P.2d 569, 574

(Residence address, street and number, if any, of affiant_____.
(Post office address of affiant
in county of _____) _____

Subscribed and sworn to before me this _____ day of _____, 19___.

_____
Notary Public
_____, Arizona
My commission expires on the _____ day of _____, 19___.

(1949). The constitutionally-prescribed wording of the circulator's affidavit must necessarily be followed over the wording of a conflicting statute.

■ Finally, it is unclear exactly what significance Intervenors attribute to the Secretary of State's sample form. Although A.R.S. § 19–111(B) permits the Secretary of State's office to advise referendum applicants of perceived defects, our statutes do not authorize, nor would our constitution permit, that office to pass ultimate judgment on whether petitions comply with constitutional requirements. That is a judicial function. *See* Ariz. Const. art. 3. Intervenors cannot rely on the Secretary of State's sample form any more than they can rely on a statute that conflicts with the constitution. Although Intervenors' "Catch 22" argument may help explain how the constitutional defect occurred, it does not cure it.

## B. Adequacy of Independent Proof of Petitions' Validity

■ Next, Intervenors argue that although the petitions do not comply with art. 4, pt. 1, § 1(9) and A.R.S. § 19–112(B), adequate independent proof exists to restore the presumption of validity that would apply if the petitions were not defective. We disagree.

In *Direct Sellers*, the referendum petitions in question did not comply with A.R.S. § 19–112's requirement that the circulator verify that she was "a qualified elector of the State of Arizona." We held that the defect in the circulator's affidavit did not render the petitions null and void, but only destroyed the presumption of validity of the signatures. 109 Ariz. at 5, 503 P.2d at 953. We also held that the presumption of validity could be reinstated by proof that the circulators were, in fact, qualified electors. *Id.*

In this case, the circulator's affidavit failed to verify the circulator's belief that the signers were qualified electors of the City of Scottsdale. It follows from *Direct Sellers*, then, that Intervenors could arguably cure the defect and restore the presumption of validity by proving that the

circulators, in fact, believed the petition signers to be qualified electors of the City of Scottsdale. We need not dwell on this point, however, because the record contains no such proof.

Intervenors contend, however, that the Scottsdale City Clerk's certification pursuant to A.R.S. § 19–121.04(B) restores the presumption of validity that was lost due to the defect in the circulators' affidavits. To refer a city measure, Arizona's constitution requires that 10% of the city's qualified electors sign referendum petitions. Ariz. Const. art. 4, pt. 1, § 1(8). In Arizona, we do not always require that each and every signature be certified as valid. Two separate checks help assure that petitions contain the requisite number of valid signatures. The first check, a constitutional one, is the circulator's affidavit of verification. *See* Ariz. Const. art. 4, pt. 1, § 1(9). The second check, a statutory one, is the random sampling of 5% of the signatures to project an estimated number of valid signatures. *See* A.R.S. § 19–121.02(A).

Under A.R.S. §§ 19–121.02(A) and 19–141, the city clerk randomly selects 5% of the signatures and forwards them to the county recorder for verification. The county recorder then checks the signatures in the random sample and transmits the information back to the city clerk, who uses the results to project the number of valid signatures. *See* A.R.S. § 19–121.04; *see generally City of Flagstaff v. Mangum*, 164 Ariz. 395, 793 P.2d 548 (1990). If the projected number of valid signatures is greater than or equal to 105% of the constitutionally-required number of signatures, "it is presumed the petition contains the required number of signatures by qualified electors." *See Save Our Public Lands v. Stover*, 135 Ariz. 461, 464, 662 P.2d 136, 139 (1983). In such a case, A.R.S. § 19–121.04(B) directs the city clerk to certify the referendum petitions and place the measure on the ballot without actually checking the validity of the remaining signatures. It is this certification that the city clerk made here and that Intervenors claim is sufficient to overcome the petitions' deficiencies.

We do not believe that satisfying the statutory requirement cures the failure to satisfy the ĉonstitutional requirement. Both are important checks on the validity of petition signatures. The circulator's constitutional obligation of verification, however, is a separate obligation from the statutory sampling of signatures.

Ariz. Const. art. 4, pt. 1, § 1(9) and A.R.S. § 19–112(B) impose an affirmative duty on petition circulators to swear under oath that they believe the petition signers are qualified electors of the relevant constituency—the constituency affected by the measure to be referred. The framers of the Arizona Constitution included this separate verification requirement to lend authenticity to the signature process. This verification requirement seeks to compel circulators to use reasonable efforts to obtain *valid* signatures, not just signatures. The circulator is the only person in the process who is required to make a sworn statement and is, therefore, the person under the greatest compulsion to lend credibility to the process. If we were to accept Intervenors' argument that the city clerk's certification alone is adequate, we would be reading out of existence a constitutional provision that the framers saw fit to include.

 Finally, Intervenors contend that the signature sheets contain a statement by the petition signers that they were qualified electors of the City of Scottsdale. We fail to see how an unsworn petition signer's statement negates the constitutional requirement of the circulator's sworn affidavit.

In sum, the defect in the circulator's affidavit destroyed the presumptive validity of the signatures. The defect has not been cured and Intervenors have not independently established that sufficient valid signatures exist. It is not "nit-picking" to require compliance with the express command of the Arizona Constitution. If our state constitution contains provisions considered too inconvenient for present-day operation, the remedy is to amend it—not to ignore it. Those asserting their constitutional right of referendum must follow the constitutional requirements.

## CONCLUSION

The petitions do not comply with Ariz. Const. art. 4, pt. 1, § 1(9) and A.R.S. § 19–112(B), and the defect has not been cured. The petitions are, therefore, insufficient to require an election. *See Direct Sellers*, 109 Ariz. at 5–6, 503 P.2d at 953–54 (failure of circulator's affidavit to comply with statutory requirement rendered referendum petitions invalid); *see also In re Initiative Pet. No. 9*, 185 Okla. 165, 168–69, 90 P.2d 665, 668–69 (1939) (failure of circulator's verification to state circulator's belief that each signer was legal voter of Oklahoma City was substantial defect in form that justified refusal of city clerk to certify sufficiency of petition). *Cf. Cottonwood*, 134 Ariz. at 48, 653 P.2d at 696 (failure to comply with constitutional and statutory attachment requirement rendered referendum petitions insufficient).

Accordingly, we reverse the trial court's judgment and remand with directions to enter judgment for plaintiffs. Because the issue discussed in this opinion is dispositive, we do not reach other alternative issues.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.