179 P.2d 445

**CROZIER v. FROHMILLER et al.**

No. 4864.

Supreme Court of Arizona.

April 14, 1947.

P. H. Brooks, of Winslow, for appellant.

T. G. McKesson and T. P. Riordan, both of Phoenix, for appellee James H. Kerby.

Snell, Strouss & Wilmer, of Phoenix, for appellee Ana Frohmiller.

Cunningham & Carson, of Phoenix, for appellee Wm. M. Cox.

Stahl & Murphy, of Phoenix, for appellee Maryland Casualty Co.

Moore, Romley & Roca, of Phoenix, for appellee Metropolitan Casualty Ins. Co. of New York.

Kramer, Morrison, Roche & Perry, of Phoenix, for appellee Fidelity & Deposit Co. of Maryland.

WINDES, Superior Judge.

This is a suit by the appellant, a taxpayer, hereafter designated plaintiff, against the appellees, Secretary of State, et al., hereafter designated defendants. The facts are not in dispute. In the year 1933 the legislature made a lump sum appropriation for the Office of Secretary of State for the fiscal years 1933-34 and 1934-35 in the aggregate amount of $44,458, for salaries and wages; for printing session laws; for operation; for initiative and referendum expense. Defendant James H. Kerby, the then secretary of state, used the entire appropriation with the exception of a small item of $48.20 for purposes other than those designated in the appropriation for initiative and referendum expense, and spent for the latter item the additional sum of $59,794.41. Defendant State Auditor approved the claims and defendant Cox, the then State Treasurer, paid the same with state funds. The action is to recover the amount expended over and above the appropriation upon the ground it was an illegal expenditure of public funds without legislative appropriation. The lower court rendered a summary judgment against the plaintiff.

The issue of law is clear-cut. Plaintiff contends that since there was no legislative appropriation for the expenditures, they were without authority of law and he should recover. Defendants contend that since the Constitution itself, art. 4, pt. 1, § 1, requires the secretary of state to perform the duties for which the expenditures were made, there was no necessity for legislative appropriation. In other words, defendants' position is that since the Constitution requires the secretary of state to perform the duties, it was in law a constitutional appropriation to the extent of the necessary expense in carrying out such duties.

Appellant cites numerous provisions of our statutes concerning the expenditure of public funds and the necessity for a legislative appropriation in order to incur a

public obligation. The provisions of our Financial Code or any other enactment have no bearing upon the problem. If the Constitution in legal effect directs the expenditure, there is nothing the legislature can do, or omit to do, to prevent it. We therefore confine ourselves to the constitutional question.

Article 4, part 1, section 1, Arizona Constitution, provides in substance as follows: That the people reserve the right to enact and reject laws independently of the legislature and at their option to approve or reject any legislative act; that any measure or constitutional amendment proposed under the initiative and any measure to which the referendum is applied shall be referred to a vote of the qualified electors; that the legislature shall not repeal nor amend a measure approved by the electors; that initiative and referendum petitions be filed, prescribing the contents thereof; directs the secretary of state to cause these measures to be placed upon the official ballot in such manner that the electors may express their approval or disapproval; directs that the text of all measures shall be published as proposed amendments to the Constitution; and directs that the entire section shall in all respects be self-executing. Article 21, section 1, Arizona Constitution, concerning the publication of constitutional amendments so far as applicable herein reads:

"* * * Until a method of publicity is otherwise provided by law, the secretary of state shall have such proposed amendment or amendments published for a period of at least ninety days previous to the date of said election in at least one newspaper in every county of the state in which a newspaper shall be published, in such manner as may be prescribed by law. * * *"

It is crystal clear that in adopting the foregoing provisions of our Constitution the people of this state meant to reserve to themselves without the possibility of legislative interference the supreme power in legislative matters, and meant that the legislature occupy a secondary position in this field of government. It was never intended that the legislature be given the power, directly or indirectly, by action or inaction, to hamper or shackle the people in the exercise of such a vital right. So fearful were the people that this right to supervise the activities of the legislature might in some way be impeded they provided in the Constitution machinery sufficient to exercise the right without legislation, and in addition expressly directed that these provisions should be self-executing. Consequently they are self-executing. It would be possible to submit measures to the voters without enabling legislation unless perchance it is necessary that the legislature appropriate the funds to bear the cost of such submission. If a legislative appropriation be necessary, potentially the will of the people could be defeated in this important matter. It would be relegated to the status of a mere moral force. The Consti-

tution does not say this supreme right of legislation shall be exercised if the legislature chooses to make an adequate appropriation. It says the people shall have the right independently of the legislature, and this means independently of legislative action or inaction. There is no implied proviso that this right shall be exercised provided the legislature sees fit to appropriate sufficient funds to pay the cost thereof. The legislature could not interfere with these matters by direct legislation, and what it cannot do directly it cannot do indirectly. State et al. v. Yums, Irr. District, 55 Ariz. 178, 99 P.2d 704. If there be an evil resulting from this situation the remedy must be something other than choking the life from the constitutional right to use independently the initiative and referendum.

Appellant cites the case of Kerby v. Griffin, 48 Ariz. 434, 62 P.2d 1131. There is dictum in that case indicating that the court assumed no publicity of initiative and referendum matters could be paid with public funds without a legislative appropriation. Therein the court said that the State Auditor is permitted to audit and allow claims against the state for which the legislature has appropriated money, and not otherwise. This rule is not without exception. In fact, this court has heretofore held that the Auditor must allow claims without legislative appropriation if the Constitution in legal effect imposes the obligation to pay the same. Windes v. Frohmiller, 38 Ariz. 557, 3 P.2d 275.

In Kerby v. Griffin, supra, the court did not have before it for consideration or decision the question as to whether the expenditure could have been made without legislative appropriation.

It may be that the secretary of state spent more than was necessary to perform his constitutional duties, but that question is not before the court for decision. Considering the history of prior appropriations to this office, however, it does appear that the appropriation was entirely inadequate for the secretary to pay the usual expenses of operating his office, and also cause proper publicity to be given such measures as was required by law.

The position herein taken is not without judicial sanction. The State of North Dakota in passing on the same question and with substantially the same constitutional provisions stated:

"The provision by its terms is made self-executing, and, hence, given the force and effect of a positive, active rule of action. The provision further restricts legislative power; it gives to the lawmakers only power to enact laws to facilitate the operation of the constitutional provision, and specifically deprives them of power to enact any law 'to hamper, restrict or impair the exercise of the rights' reserved to the people in the provision. Hence, if the Legislative Assembly had enacted any legislation which would have interfered with the performance by the secretary of state of the duty enjoined upon him by the constitution-

al provision, such legislative enactment would have been a mere nullity. It is apparent that the secretary of state cannot perform the duty enjoined upon him by the provisions of the Constitution without incurring the expense incident to the publication and mailing of the publicity pamphlet. If the Legislative Assembly could prevent the secretary of state from performing this duty by failing or refusing to appropriate funds for the prescribed constitutional purpose, it could, in effect, nullify the constitutional mandate. We are of the opinion that it was the intention of the people as evidenced by this constitutional provision that the secretary of state should perform all the functions prescribed, without legislative interference, and that the cost incident to the publication and distribution of the publicity pamphlet is a proper expenditure to be defrayed out of the state treasury, upon bills audited by the state auditing board, even though the Legislative Assembly has made no specific appropriation for the purpose." State ex rel. Byrne, Secretary of State, v. Baker, State Auditor, 65 N.D. 190, 262 N.W. 183, 184.

Judgment affirmed.

. STANFORD, C. J., and UDALL, J., concur.

LA PRADE, J., having disqualified himself, the Honorable DUDLEY W. WINDES, Judge of Superior Court of Maricopa County, was called to sit in his stead.