905 P.2d 589

Louise W. VAN RIPER, a resident of the Town of Carefree, Arizona, Plaintiff–Appellant,

v.

Diane THREADGILL, in her capacity as Town Clerk for the Town of Carefree, Arizona; Town of Carefree, Arizona, a municipal corporation, Defendants–Appellees,

Tri–C Investments, an Arizona general partnership, Intervenor.

No. 1 CA–CV 95–0195.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 17, 1995.

Review Denied Nov. 21, 1995.

Ellen M. Van Riper, Cave Creek, for plaintiff-appellant.

Anderson, Brody, Levinson, Weiser & Horwitz, P.A. by Stephen A. Myers, Phoenix, for defendants-appellees.

Beus, Gilbert & Morrill, P.L.L.C. by Paul E. Gilbert and Jeffrey D. Gross, Phoenix, for intervenor.

## OPINION

KLEINSCHMIDT, Presiding Judge.

The issue in this case is whether the failure to file a statement of organization form in connection with an application for a referendum petition renders the signatures obtained on the petition void. We hold that the failure to file the form in this case is excused because the information supplied to the applicant was too ambiguous to enable a person to determine whether the form had to be filed.

In September 1994, the Mayor and Common Council of the Town of Carefree voted unanimously to change the zoning classification of a twenty-acre parcel of property from residential to commercial. Displeased, Barry DiSimone, a resident of Carefree, obtained a Referendum Application Packet from the Town Clerk's office, intending to have the zoning issue referred to the qualified electors of Carefree. The packet included an application for a referendum serial number, a statement of organization form, a copy of Title 19, Arizona Revised Statutes ("A.R.S."), and a copy of the ordinance approved by the town council.

DiSimone completed the serial number application and submitted it to the Town Clerk's office. The Town Clerk issued a referendum serial number to DiSimone and indicated that twenty-two signatures were necessary to refer the matter to a vote. At the time he received the packet, DiSimone was acting on his own and was not associated with any other person in seeking to bring about a referendum. DiSimone, believing it

was unnecessary, never submitted the statement of organization form. He prepared signature sheets and, with the assistance of several other residents of Carefree, collected 148 signatures. DiSimone and his helpers had no formal organization and no common fund, but while collecting signatures, DiSimone wrote letters to the *Foothills Sentinel* indicating that he was associated with a "coalition of Carefree residents" that was a "loose affiliation of like-minded individuals with a common objective." He referred to this "coalition" as "our referendum committee" and as a "referendum coalition."

When DiSimone submitted the petition signature sheets, the Town Clerk refused to transmit them to the Maricopa County Recorder for verification of the signatures because the sheets contained ten, rather than fifteen, signature lines and because DiSimone had not submitted the statement of organization form before he and others collected the signatures. The Plaintiff, a qualified elector of the Town of Carefree, filed a complaint in the superior court pursuant to A.R.S. section 19–122(A) (Supp.1994) to compel the Town Clerk and Town of Carefree to submit the signatures to the County Recorder for verification. The trial court granted the Town's motion for summary judgment, ruling that the failure to file the statement of organization invalidated the signatures because "the circulator of the petition failed to identify himself and his organization as required." The court also ruled that the fact that the signature sheets contained ten signature lines rather than fifteen lines was not a sufficient reason to invalidate the petitions.

Arizona courts have long recognized the strong public policy favoring the initiative and referendum. *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991). The supreme court has characterized the right of initiative and referendum as "vital," and one so important to the authors of our constitution that they included sufficient machinery in the constitution to make the right self-executing. *Crozier v. Frohmiller*, 65 Ariz. 296, 298, 179 P.2d 445, 447 (1947).

■ The fact that a constitutional provision is self-executing does not, however, bar legislation on the subject, *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972), and referendum petitions must strictly comply with constitutional and statutory requirements to ensure that the constitutional right is not abused or improperly expanded. *Western Devcor*, 168 Ariz. at 429, 814 P.2d at 770. Legislation relating to referendum petitions, however, may not unreasonably hinder or restrict the constitutional provision and must reasonably supplement the constitutional purpose. *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953.

The Plaintiff claims that DiSimone and his group were not a political committee. If they were, she says the statutes are so unclear as to be unconstitutionally vague. We conclude that DiSimone and his group were a political committee, but that the statutes and the forms supplied to applicants are so confusing that they set a trap for those who are trying to exercise their right to seek a referendum. They unreasonably hinder the exercise of the right.

## DISIMONE AND HIS GROUP WERE A POLITICAL COMMITTEE

■ Once DiSimone and his like-minded associates began cooperating on the referendum, they constituted a "political committee" and, as such, would ordinarily be required to file a statement of organization form. Arizona Revised Statutes Annotated section 19–114(B) (Supp.1994) provides:

> Signatures obtained on initiative and referendum petitions by a political committee proposing the initiative or referendum or any of its officers, agents, employees or members prior to the filing of the committee's statement of organization are void and shall not be counted in determining the legal sufficiency of the petition.

"Political committee" is defined by A.R.S. section 16–901(15) (Supp.1994) as:

> a candidate or any association or combination of persons that is organized, conducted or combined for the purpose of influencing the result of any election in this state or in any county, city, town, district or precinct in this state, that engages in polit-

ical activity in ... support of or opposition to an initiative, referendum or recall....

This definition is couched in such broad terms that we believe it applies to informal ad hoc groups like DiSimone's. But for the confusion engendered by the statutes and the forms DiSimone was given, the group should have filed the organizational form before petitions were circulated.

## THE APPLICATION PROCESS IS SO CONFUSING THAT IT UNREASONABLY HINDERS THE EXERCISE OF THE RIGHT TO FILE A REFERENDUM PETITION

■ While DiSimone and his associates fit the broad statutory definition of "political committee," the statutes and forms for seeking a referendum are worded in a way that would mislead an unorganized group, and did mislead DiSimone, into believing that no political committee existed which needed to file an organizational form.

### 1. The Statement of Organization Form is Misleading

The form is obviously adapted for reporting by formal organizations. It is silent as to how individuals are to fill in its blanks, leaving an applicant to wonder if it indeed is intended to be completed in every instance. The form refers the applicant to A.R.S. section 16–902 (Supp.1994), which requires that every political committee must have a chairman and a treasurer, must include the name of any sponsoring organization in the committee title, and must designate one or more state banks as its campaign depository. In reading the statute, an applicant like DiSimone might easily be led to believe that an ad hoc group of like-minded volunteers such as those with whom he was associated did not fall within its purview. Worse yet, the form made no reference at all to A.R.S. section 16–901(15) where "political committee" is defined. Nor does any of the other information supplied to an applicant refer to the statutory provision defining "political committee."

### 2. The Statutes Do Not Clearly Require Every Applicant to File A Statement of Organization

Two separate provisions found in Title 19 bear on the subject:

Arizona Revised Statutes section 19–111(C) (Supp.1994) requires the Secretary of State to supply every applicant with the text of "this article" governing the initiative and referendum, all rules adopted by the Secretary of State pursuant to the statute, a statement of organization form and a notice relating to that statement advising, "This statement must be filed before valid signatures can be collected." The statute itself does not mandate that every applicant must file a statement of organization form.

Arizona Revised Statutes section 19–114(B) only requires a "political committee" to file the statement of organization form. It does not say that every applicant must do so.

We agree with the Defendants that it is important for interested parties to know exactly who is backing a referendum drive and that it is reasonable to require individuals to file a form which discloses whether they are acting alone or in concert with others. We also believe, however, that reasonable notice of such a requirement must be imparted to every applicant.

Given the current statutes and forms, it is easy to illustrate what would happen to a lay person who wants to implement a referendum. The person obtains a packet from the municipal clerk. He fills out the serial number application and reads the statement of organization form. The form tells him that it must be filed before valid signatures can be collected, but it is labeled "State of Arizona Political Committee Statement of Organization." Almost everything on the form pertains to the identity and operations of a formal organization so that an individual would have to fill in "not applicable" to almost every question.

Confused, the applicant might wonder whether he and an informal group of associates, if indeed he had any associates at that point, were a political committee. He would search the statutes provided to him in the packet to no avail. Looking to the statement

of organization form, he might see an unexplained reference under the title of the form to A.R.S. section 16–902. If he turned to that statute, he would simply be told that a political committee must have officers and a bank account, leading him to conclude that he and his informal group were not a political committee. Since the statutes provided to him only require political committees to file a statement of organization, he would reasonably conclude that he need not do so. It is undisputed that this is exactly what happened to DiSimone.

### THE TRIAL COURT RULED CORRECTLY ON THE OTHER ISSUES

■ The Defendants argue that the trial judge incorrectly ruled that the petition was not defective because the forms contained only ten rather than fifteen signature lines. The trial judge was correct on this point. We believe that the fifteen signature lines referred to in A.R.S. section 19–101(A) (Supp.1994) is a maximum rather than a minimum. See A.R.S. § 19–121(C) (Supp.1994) ("Not more than fifteen signatures on one sheet shall be counted."). The petition is not defective for that reason.

■ Finally, the intervenors argue that the petition signature sheets did not comply with A.R.S. section 19–112(B) (Supp.1994) because the text of the original ordinance establishing the property as an R1–35 zoning was not attached to the sheets and because the site plan and related documents submitted with the application for rezoning were not attached to the sheets. The trial court rejected this argument and so do we. The statute which governs what must be attached to the petition when the measure to be referred is enacted by the legislative body of an incorporated town is A.R.S. section 19–121(E) rather than A.R.S. section 19–112(B). Under A.R.S. 19–121(E), the only things which must be attached to the petition are the ordinance or resolution, a legal description of the property in the case of a zoning measure, and any amendments to the ordinance made by the legislative body. The petition in this case complied with those requirements.

We reverse the trial court with respect to the issue whether the petition was defective because no statement of organization was filed. We remand to the trial court with directions to enter an order granting summary judgment to the Plaintiff and directing the Clerk of the Town of Carefree to forward the referendum petition to the Maricopa County Recorder for processing. We award attorney's fees to the Plaintiff pursuant to A.R.S. section 12–2030(A) (1994).

NOYES, J., concurs.

EHRLICH, Judge, specially concurring.

I concur in the majority's ultimate disposition of this case. I also agree with its affirmance of the trial court's rulings regarding the number of signature lines required by Ariz.Rev.Stat.Ann. ("A.R.S.") section 19–901 and the petition-attachment requirements of section 19–121(E). I specially concur, however, because of my disagreement with the majority's conclusion that Barry DiSimone qualified as a "political committee" under section 19–114(B).

Nothing in the record demonstrates that, when he sought the referendum information from the Carefree Town Clerk on September 6, 1994, as well as when he applied for and received the referendum serial number three days later, see A.R.S. § 19–111(A), DiSimone was acting in anything but an individual capacity.[1] This is true even if he was respond-

---

1. In characterizing DiSimone as a representative of a "political committee," the majority, as did the parties, utilizes the definition found in section 16–901(15). However, the preface to that statute makes it clear that the definitions contained therein pertain only to "this chapter." There is no reference in Chapter 6 of Title 16 to Article 2 of Title 19, as there is no reference in A.R.S. § 19–111 et seq. to A.R.S. section 16–901. The incorporation of that definition of "political committee" into Title 19, Article 2, comes from the "Statement of Organization" form created by the Secretary of State, which refers, without statutory support, to A.R.S. section 16–902, "Organization of political committees." Ignoring this puzzle, however, and accepting the applicability of the definition of "political committee" in section 16–901(15), when DiSimone received the referendum serial number, he was not part of "any association or combination of persons that is *organized, conducted or combined for the pur-*

ing to his perception that other residents of the town were like-minded in their opposition to this development. Presumably, any one who begins the daunting process of circulating a referendum petition believes that there is support for his position but to believe in such backing is not to say that a person thus is not acting in an individual capacity.[2] Acting as an individual at the time of his receipt of the referendum serial number, DiSimone was not required to file the "statement of organization" form provided for in section 19–111(C). Accordingly, the town clerk should not have rejected the petition for that reason.

Sections 19–111(A) and (C) provide:

A. *A person or organization* intending to propose a law or constitutional amendment by initiative petition or to *file a referendum petition* against a measure, item, section or part of a measure shall, before causing the petition to be printed and circulated, file with the secretary of state an *application,* on a form provided by the secretary of state, *setting forth his name or, if an organization, its name and the names and titles of its officers, address, his intention to circulate and file a petition, a description* of no more than one hundred words of the principal provisions of the proposed law, constitutional amendment or measure and the text of the proposed law, constitutional amendment or measure to be initiated or referred in no less than eight point type, and applying for issuance of an official serial number. [Emphasis added.]

\*      \*      \*      \*      \*      \*

C. The secretary of state shall print in pamphlet form and shall furnish to each applicant, at the time the application is submitted, a copy of the text of this article governing the initiative and referendum and all rules adopted by the secretary of state pursuant to this title. In addition, the secretary of state shall at this time furnish the applicant with a statement of organization form and a notice stating:

"This statement must be filed before valid signatures can be collected." The secretary of state shall furnish a sufficient supply of these pamphlets to the county, city and town clerks who shall similarly furnish the pamphlet to each applicant.

Section 19–114(B), the enforcement mechanism for section 19–111(C), reads:

Signatures obtained on initiative and referendum petitions by a political committee proposing the initiative or referendum or any of its officers, agents, employees or members prior to the filing of the committee's statement of organization are void and shall not be counted in determining the legal sufficiency of the petition.

Section 19–111(A) makes clear that the referendum-petition process distinguishes between individual applicants and those applying on behalf of a group or organization. Under that subsection, individual or representative applicants seeking to file a referendum petition are required to provide the same information (name, address, statement of intent to circulate a petition, and the text of the law or measure to be referred), except that a group applicant also must provide the name of the group and the names and titles of its officers.

The problem in this case arises from section 19–111(C), which does not delineate between individual and group applicants. However, a harmonious reading of sections 19–111(C) and (A) with section 19–114(B), which we are required, when possible, to do, *see Achen–Gardner, Inc. v. Superior Court (City of Chandler),* 173 Ariz. 48, 54, 839 P.2d 1093, 1099 (1992), necessitates an analysis of subsection (C) that also follows the individual-group dichotomy established in subsection (A).

The first and third sentences of section 19–111(C) specify that "each applicant" is to be provided, by the secretary of state or the proper local authority, a "pamphlet" containing "a copy of the text of this article governing the initiative and referendum and all

---

pose of ... support of ... [a] referendum...."
A.R.S. § 16–901(15) (emphasis added).

**2.** The significance of any evolution from individual to representative action and the consequent necessity of the filing of a statement of organization at that time is not at issue here.

586

rules adopted by the secretary of state pursuant to this title."[3] However, the second sentence, where the secretary of state is directed to "furnish the applicant with a statement of organization form and a notice stating: 'This statement must be filed before valid signatures can be collected,'" conspicuously uses the term "the applicant" and not "each applicant." Given the individual-group distinction established in section 19–111(A), I think that the better interpretation of subsection (C) is that the secretary of state is not required to provide individual referendum-petition applicants with the statement of organization.

While Van Riper herself says that subsection (C) requires that all applicants be given the statement of organization forms, she nonetheless argues that the statutory directive to distribute the form is not a directive that all applicants fill out and file the form. For this she relies upon section 19–114(B), arguing that, because that provision expressly penalizes only "political committees" which have collected petition signatures prior to filing their statement of organization, a reading of section 19–111(C) as requiring all applicants to file a statement of organization would render section 19–114(B) "redundant and futile."

Van Riper's reasoning is valid as far as it goes; statutes should not be interpreted in such a way as to render any word, clause or provision "superfluous, void, contradictory or insignificant." *E.g., Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993). However, I believe that the same reasoning confirms my reading of section 19–111(C). In light of section 19–114(B)'s singular focus on "political committees," the second sentence of section 19–111(C) only makes sense and, thus, would not be rendered surplusage, if read as exempting individual referendum-petition applicants from receiving the statement of organization. Requiring individual petition applicants to fill out the statement of organization, marking "not applicable" to every entry except the date, or extensively crossing-out and editing the questions so that sensible answers can be entered is both absurd and wasteful, particu-

larly given that the statement of organization in that case would add no information to that already included in the original application. *E.g., Flexmaster Aluminum Awning Co., Inc. v. Hirschberg,* 173 Ariz. 83, 89, 839 P.2d 1128, 1134 (App.1992) (court of appeals construes statutes in manner that gives them reasonable meaning). Reading such a hollow requirement into the statute also undermines the spirit of this state's long-standing public policy supporting the initiative and referendum. *See* Ariz. Const., Art. IV, pt. 1 (1914); THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910 (John S. Goff, ed.), *passim;* John D. Leshy, *The Making of the Arizona Constitution,* 20 Ariz.St.L.J. 1, 63–64; *Western Devcor, Inc. v. City of Scottsdale,* 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991).

In sum, the most logical interpretation of sections 19–111(A) and (C) and section 19–114(B) describes a process whereby an individual referendum-petition applicant is not required to receive, nor, by extension, to file a statement of organization. It is on this basis that I would reverse the trial court's ruling that the petition was defective.

---

**3.** No rules have been adopted.