IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**VOICE OF SURPRISE, ET AL.,**
*Plaintiffs/Appellants,*


*v.*


**SKIP HALL, ET AL.,**
*Defendants/Appellees.*

———————————

No. CV-23-0117-PR
**Filed August 14, 2023**

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Scott A. Blaney, Judge
No. CV2022-013360

**REVERSED AND REMANDED**

———————————

Opinion of the Court of Appeals, Division One
529 P.3d 1212 (Ariz. App. 2023)

**VACATED**

———————————

COUNSEL:

Timothy A. La Sota, Timothy A. La Sota, PLC, Phoenix, Jennifer J. Wright (argued), Jennifer Wright Esq., PLC, Phoenix, Attorneys for Voice of Surprise and Quintus Schulzke

Robert Wingo, Ellen Van Riper (argued), Melinda Bird, City of Surprise City Attorney's Office, Surprise, Attorneys for Hall, Duffy, Judd, Winters Jr., Cline, Hastings, Remley, Aguilar and City of Surprise


Cameron C. Artigue (argued), Gammage & Burnham, P.L.C., Phoenix,

Attorneys for Dominium, Inc.

Jeffrey D. Gross, Berry Riddell, LLC, Scottsdale, Attorneys for Truman Ranch 46 SWC LLC

Nancy L. Davidson, League of Arizona Cities and Towns, Phoenix, Attorneys for Amicus Curiae League of Arizona Cities and Towns

Daniel J. Adelman, Arizona Center for Law in the Public Interest, Phoenix, Attorneys for Amicus Curiae Arizona Center for Law in the Public Interest

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Amici Curiae Arizona Free Enterprise Club and Center for Arizona Policy Action

_____

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, and KING joined.

_____

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1          This is a referendum matter concerning a city ordinance. The proponent failed to include the text of the to-be-referred ordinance within its application for a petition serial number, as required by A.R.S. § 19-111(A). The question here is whether that error only affected a presumption of signature validity that could be reinstated by showing that the City Clerk knew what measure was being referred and that the ordinance was attached to the subsequently circulated petition sheets. If the answer is "no," we must decide whether the City Clerk was authorized to reject all circulated, signed petition sheets due to this application error.

¶2          We conclude that the presumption of signature validity does not apply to an application error, and therefore the error cannot be cured by showing that the City Clerk and petition signers knew what ordinance was being referred. But we also decide that the City Clerk could only exercise the authority expressly granted by the constitution and the election

2

statutes, and nothing authorized her to reject petition sheets due to an application error.

## BACKGROUND

¶3 On August 16, 2022, the City Council for the City of Surprise passed Ordinance 2022-18 ("Ordinance 18"), which approved a preliminary development plan for a large area of property that Dominium, Inc. and Truman Ranch 46 SWC LLC (collectively, "Developers") want to develop. Ordinance 18 would take effect thirty days later unless referred to the ballot for a vote by the people. *See* A.R.S. § 19-142(A) ("The petition shall be filed with the city or town clerk within thirty days after passage of the ordinance, resolution or franchise.").

¶4 Plaintiff Voice of Surprise ("VOS"), a political action committee, sought to refer Ordinance 18 to the ballot. To succeed, VOS was required to gather 3,114 signatures on petition sheets before the thirty-day expiration. This target number represents ten percent of the electorate who voted in the previous election at which a mayor or council members were chosen. *See* Ariz. Const. art. 4, pt. 1, § 1(8); A.R.S. § 19-142(A).

¶5 VOS initiated its effort on August 29 by filing both an application for a petition serial number and a statement of organization with the City Clerk for the City of Surprise. *See* § 19-111(A). But the application did not set forth the text of Ordinance 18, as required by § 19-111(A). Although the City Clerk realized the error, she accepted the application without comment and issued a serial number for placement on petition sheets that VOS subsequently circulated for signatures.

¶6 VOS returned to the City Clerk's Office on September 16 and submitted petition sheets bearing 5,432 signatures supporting referral of Ordinance 18 to the ballot. There is no dispute that VOS properly attached Ordinance 18 to petition sheets so people signing the petition sheets could review it. *See* A.R.S. § 19-112(B) (requiring attachment). Thereafter, Dominium urged the City Clerk to reject the petitions for multiple reasons, including VOS's failure to attach Ordinance 18 to the application for a petition serial number. On October 5, the City Clerk rejected all the petition sheets and signatures based solely on this application error.

¶7 VOS and its chairman, who we refer to collectively as "VOS," initiated this action by filing a complaint against the City Clerk, other City of Surprise officials (collectively, the "City"), and the Developers pursuant

to A.R.S. § 19-122(A). VOS asked the superior court to compel the City Clerk to accept the petition sheets and signatures and process them in accordance with A.R.S. § 19-121.01 to determine whether enough valid signatures support placing the referendum on the ballot. *See* A.R.S. § 19-141(A) (applying A.R.S. §§ 19-101 to -161 to referenda concerning municipal legislation).

¶8 After holding an evidentiary hearing on VOS's application for preliminary and permanent injunctive relief, the court denied VOS's request and entered judgment for all defendants. The court reasoned that because VOS was required to strictly comply with the statutory requirements directing the referendum process, *see* A.R.S. § 19-101.01, its failure to file an application that strictly complied with § 19-111(A) was fatal to the referendum effort. The court of appeals affirmed. *See Voice of Surprise v. Skip Hall*, 529 P.3d 1212, 1218 ¶ 26 (Ariz. App. 2023).

¶9 We granted review of VOS's petition for review to decide whether the City Clerk properly rejected the petition sheets and all signatures based solely on the application error. To expedite matters, we previously entered a decision order resolving the matter, and we stated that a more fully explanatory opinion would follow. This is that opinion, and it replaces the decision order.

## DISCUSSION

### I. The restorable presumption of signature validity does not apply to errors in the application for a petition serial number.

¶10 VOS does not dispute it failed to strictly comply with § 19-111(A) by omitting Ordinance 18's language from the application for a petition serial number, but it argues this was not a fatal flaw. Specifically, VOS asserts that the error only destroyed a restorable legal presumption that the gathered signatures were valid. VOS contends it restored that presumption by showing that § 19-111(A)'s objective was nevertheless satisfied because the City Clerk possessed a copy of Ordinance 18 at the time VOS filed the application, and VOS attached a copy of Ordinance 18 to each petition sheet for the signers' review. VOS asserts that the superior court therefore erred by not ordering the City Clerk to process the petition sheets.

4

**¶11** We review the superior court's judgment denying injunctive relief for an abuse of discretion. *See Molera v. Hobbs*, 250 Ariz. 13, 26 ¶ 49 (2020); *Arrett v. Bower*, 237 Ariz. 74, 77 ¶ 7 (App. 2015). An abuse of discretion occurs when a court commits a legal error by misinterpreting or misapplying the law. *See Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, 259 ¶ 13 (2022) ("An error of law constitutes an abuse of discretion." (quoting *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9 (2015))). We review the interpretation and application of statutes de novo as issues of law. *See Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580 ¶ 10 (2021).

**¶12** This Court first addressed the presumption of signature validity in *Whitman v. Moore*, 59 Ariz. 211, 216 (1942), *overruled in part on other grounds by Renck v. Superior Court*, 66 Ariz. 320, 327 (1947), which concerned a challenge that enough qualified signatures supported placing an initiative on the ballot. *Id.* Because deciding how petition signatures should be qualified was "of considerable importance" and the case would guide "future cases involving the sufficiency of initiative, referendum, recall and, perhaps, nomination petitions," the Court discussed the presumption at length. *See id.* at 217–18.

**¶13** The Court began by emphasizing that most constitutional convention delegates and the ratifying public considered the constitution's initiative and referendum provisions "among the most important to be found therein." *Id.* at 218. Consequently, the Court concluded:

> [W]hen there is any doubt as to the requirements of the constitution going only to the form and manner in which the power of an initiative [and necessarily the other direct-democracy powers] should be exercised, every reasonable intendment is in favor of a liberal construction of those requirements and the effect of a failure to comply therewith, unless the constitution expressly and explicitly makes any departure therefrom fatal.

*Id.* at 220. The Court recognized that "technical restrictive constructions" of laws governing the initiative process would recast the initiative power as "naught but an empty shell." *Id.* at 221 (quoting *In re Initiative Petition No. 23, State Question No. 38*, 127 P. 862, 866 (Okla. 1912)).

**¶14** This background underlies the *Whitman* Court's recognition of "[t]he presumption . . . that petitions which are circulated, signed, and filed are valid." *Id.* (quoting *In re Initiative Petition No. 23*, 127 P. at 866);

*see also id*. at 225.   The Court reasoned that people signing petitions are "members of the largest legislative body in the state," and when signing petitions, they act in "a public or at least a quasi[-]public capacity," meaning "the law presumes the validity and legality of their acts" until proven otherwise.   *Id.* at 221–22 (quoting *In re Initiative Petition No. 23*, 127 P. at 866).   Thus, when a petition or an accompanying circulator's affidavit deviates from constitutional requirements directing the form and contents of petitions and circulator verifications that assist in ascertaining that signers are qualified electors—for example, listing the signer's residence and date of signing, or stating the circulator's belief in an affidavit that the signer was a qualified elector—the deviation "destroy[s] the presumption of validity," but the proponent may reinstate that presumption by otherwise showing that "the signer was qualified in all respects."   *Id.* at 225. The Court thereafter reviewed challenges to classes of signatures and ultimately upheld placement of the initiative on the ballot.   *See id.* at 226–33.

¶15     After *Whitman*, courts have consistently applied the presumption of validity to circulated, signed, and filed petitions that technically deviated from constitutional or statutory requirements, and, unless expressly prohibited from doing so, permitted their reinstatement through independent proof that the signatures had been collected in the required manner and were valid.   *See, e.g., Jenkins v. Hale*, 218 Ariz. 561, 562 ¶ 8 (2008) (nominating petitions); *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 301 (1993) (nominating petitions); *W. Devcor, Inc. v. City of Scottsdale,* 168 Ariz. 426, 429–31 (1991) (referendum petitions); *Save Our Pub. Lands Coal. v. Stover*, 135 Ariz. 461, 463 (1983) (initiative petitions); *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5 (1972) (referendum petitions); *Bd. of Supervisors of Maricopa Cnty. v. Superior Court*, 103 Ariz. 502, 504 (1968) (nominating petitions); *Harris v. City of Bisbee*, 219 Ariz. 36, 40 ¶ 14 (App. 2008) (referendum petitions); *Forszt v. Rodriquez*, 212 Ariz. 263, 265–66 ¶ 11 (App. 2006) (referendum petitions).

¶16     In 1989, the legislature recognized and approved *Whitman*'s presumption-reinstatement model.   In explaining the purpose of amendments to the initiative and referendum statutes, the legislature stated that initiative and referendum requirements should be "broadly construed" and declared that "the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions or the initiated or referred measure, unless the ordinance, charter,

statute or constitution expressly and explicitly makes [fatal any] departure from the terms of the law." 1989 Ariz. Sess. Laws ch. 10, § 1 (1st Reg. Sess.).

¶17 The parties disagree whether *Whitman*, its progeny, and the legislature's declaration in 1989 remain viable after enactment of § 19-101.01 in 2015 to require strict compliance with the initiative and referendum statutes. *See* 2015 Ariz. Sess. Laws ch. 285, § 1 (1st Reg. Sess.). Assuming they remain viable, the parties also disagree whether the presumption of validity can be reinstated after expiration of the time for referring a measure to the ballot. We do not address these arguments, however, because even assuming that the presumption-reinstatement model remains viable in some situations, it does not apply to application errors.

¶18 The presumption-reinstatement model applies only when statutory errors occur during the signature-gathering process and concern requirements that assist interested persons in ascertaining whether petition signers were qualified electors. *See Whitman*, 59 Ariz. at 221 ("The presumption is that petitions which are circulated, signed, and filed are valid." (quoting *In re Initiative Petition No. 23*, 127 P. at 866)); *id.* at 225 ("The ultimate substantive question obviously is whether the signer is in all respects a qualified elector, and all the requirements in regard to residence, date of signing, verification and the like are to assist interested parties to ascertain this fact.").

¶19 For example, in *Western Devcor*, circulator affidavits did not state the circulators' belief that the signatories were qualified electors, as constitutionally required. 168 Ariz. at 431. And in *Direct Sellers*, the circulators' affidavits attached to signed petitions failed to state that the circulators were qualified electors as statutorily required. 109 Ariz. at 5. The constitutional and statutory requirements for the circulator affidavits demonstrated the validity of the petition signatures, so deviation from these requirements invalidated the presumed validity of those signatures. *See W. Devcor*, 168 Ariz. at 431; *Direct Sellers*, 109 Ariz. at 5; *see also Whitman*, 59 Ariz. at 225. The presumption-reinstatement model permitted restoration of that presumed validity if the referendum proponents could provide independent proof that the objectives underlying the constitutional or statutory requirements were otherwise met, specifically, that the circulators believed the petition signers were qualified electors (*Western Devcor*), or that the circulators were in fact qualified electors (*Direct Sellers*).

¶20        But there is no challenge presently that petition signatures were improperly gathered by petition circulators and are therefore invalid. And § 19-111(A)'s requirement that the challenged measure's text be included within the application for a petition serial number does not assist in determining whether petition signers were qualified electors. That is not § 19-111(A)'s objective. Instead, including the challenged measure's text in the application notifies the public, including city officials and people interested in mounting their own referral effort, about what precisely is being challenged. Notification is particularly needed because the law permits the entirety or parts of a measure to be referred. *See Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 480 ¶ 1 (2022) (addressing a referendum petition referring only two sections of a Senate bill). Public notification permits officials to plan for a potential delay in implementing some or all of the measure and allows people and entities other than the proponent to decide whether they should initiate a referral effort. Failing to fulfill this notification requirement does not cast doubt on the validity of later-gathered petition signatures. Thus, the presumed validity of VOS's petition signatures was not lost due to the application error, and so there was nothing to reinstate.

¶21        Applying the presumption-restatement model here would also make § 19-111(A)'s text-inclusion requirement superfluous, a circumstance we generally avoid. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). VOS argues it reinstated the presumption, and therefore cured the application error, by showing that the City Clerk and the petition signers actually knew that Ordinance 18 was being challenged. Other statutes, however, explicitly require actions to ensure that knowledge. *See* § 19-112(B) (requiring a proponent to attach a copy of the challenged measure to referendum petitions); § 19-142(C) (directing the clerk to provide the proponent a copy of the challenged measure when an application is filed). Concluding that compliance with § 19-111(A) can be excused by complying with §§ 19-112(B) and 19-142(C) would make § 19-111(A)'s requirement meaningless.

¶22        In short, § 19-111(A) mandates compliance with the application requirements before the clerk issues a petition serial number. That did not occur here, making VOS's application non-compliant from the start and incapable of correction after submission of the signed petition sheets on the thirtieth day after the City Council passed Ordinance 18. *See*

*Arrett*, 237 Ariz. at 82 ¶ 28 (stating that petition sheets lacking the statutorily required serial number "could not be restored because the petition was never correct, not from the moment [the proponent] obtained it and not at the time the signatures were obtained"); *see also Direct Sellers*, 109 Ariz. at 5 (disagreeing that referendum proponents could "amend their petitions to comply with the verification provision" outside the time permitted for initiating the referendum effort because doing so would unreasonably delay the effective date of the referred law).

**¶23** We cannot excuse VOS's omission as a harmless error on the ground that neither the City Clerk nor individual petition signers were confused about which ordinance was the subject of the proposed referendum. The City Clerk and petition signers' knowledge does not fulfill § 19-111(A)'s objectives because city officials and the public at large remained in the dark about what precisely was being challenged. *See supra* ¶ 21. Excusing VOS's non-compliance would mean advancing a referendum effort that only substantially complied with statutory requirements in violation of the legislative directive for strict compliance. *See* § 19-101.01. Notably, VOS does not argue that requiring strict compliance with § 19-111(A)'s mandate to include the text of a challenged ordinance within the application as well as within the petition sheets unreasonably hindered or restricted VOS's constitutional right of referendum, making that provision unconstitutional in its application. *See Stanwitz v. Reagan*, 245 Ariz. 344, 348 ¶ 14 (2018) (stating that a statute that regulates the referendum process is permissible if it "'does not unreasonably hinder or restrict the constitutional provision and if the [statute] reasonably supplements the constitutional purpose' of the provision" (alteration in original) (quoting *Direct Sellers*, 109 Ariz. at 5)). We therefore do not address the constitutionality of applying § 19-111(A) in these circumstances to disqualify the referendum effort.

**¶24** We also disagree with VOS that its reliance on the City Clerk's acceptance of the application excused strict compliance with § 19-111(A). The Clerk performs a ministerial role in accepting applications and issuing petition serial numbers. She must accept and process any filled-in application submitted on the statutorily required form without regard to its legal sufficiency. § 19-111(A); *see also* § 19-101.01 (finding and determining "that strict compliance with the . . . statutory requirements . . . in the application and enforcement of [the statutory requirements for the referendum process] provides the surest method for safeguarding the integrity and accuracy of the referendum process").

Section 19-111(A) only directs the Clerk to reject an application if it is unaccompanied by the applicant's statement of organization. That did not occur here. Consequently, the Clerk had no discretion to reject the application but was required to accept it and issue a serial number. Doing so did not cure VOS's non-compliance with § 19-111(A).

¶25 The City Clerk also had no obligation to tell VOS it had mistakenly omitted the text of Ordinance 18 from the application. Section 19-111(B) formerly authorized city clerks to "advise the person who has submitted the petition with a written statement of any defects of which [the city clerk] is aware, but the [city clerk] shall not refuse to assign a number to the petition." 1991 Ariz. Sess. Laws ch. 1, § 7 (3d Spec. Sess.). But the legislature amended the statute in 1991 to remove that provision. *Id.* The elimination of the Clerk's discretion to point out defects forecloses VOS's argument that she had an obligation to do so.

¶26 In sum, VOS failed to strictly comply with § 19-111(A). Even assuming the presumption-reinstatement model remains viable for statutory defects after enactment of § 19-101.01, the presumption does not apply to an application error. Consequently, showing that the City Clerk knew that VOS was challenging Ordinance 18 and that the petition signatures were gathered in compliance with other statutes after VOS filed the application and received its serial number cannot cure VOS's application error.

## II. The City Clerk is not authorized to reject petition sheets based on an application defect.

¶27 Having determined that VOS did not strictly comply with § 19-111(A) when filing its application for a serial number and could not correct that error through its offered evidence, we must decide whether the City Clerk was authorized to reject the circulated and signed petition sheets on this basis. The City argues that § 19-101.01, entitled "[l]egislative findings and intent," authorizes the City Clerk to apply and enforce all constitutional provisions and election statutes governing the referendum process, including § 19-111(A). Notably, this position conflicts with the City's position that the City Clerk lacks any authority to reject an application when a proponent fails to comply with § 19-111(A). Regardless, we disagree with the City's broad view of the Clerk's authority.

**¶28**　　　　Section 19-101.01's plain language defeats the City's argument:

> The legislature recognizes that a referendum may overrule the results of determinations made by representatives of the people and therefore **finds and determines that strict compliance** with the constitutional and statutory requirements for the referendum process and **in the application and enforcement of those requirements provides the surest method for safeguarding the integrity and accuracy of the referendum process**. Therefore, the legislature finds and declares its intent that the constitutional and statutory requirements for the referendum be strictly construed and that persons using the referendum process strictly comply with those constitutional and statutory requirements.

(Emphasis added).　The City relies on the highlighted language for authority.　Conspicuously, however, § 19-101.01 does not itself authorize any particular person or entity to apply and enforce statutory requirements for referenda.　Instead, it reflects the legislature's finding and determination that those authorized by the constitution or other statutes to apply and enforce requirements should do so strictly.[1]

---

[1] Section 19-101.01 also requires courts to strictly apply constitutional requirements for the form and manner of referenda.　This conflicts with *Whitman* and a host of other cases.　*See, e.g.*, *Kromko v. Superior Court*, 168 Ariz. 51, 57–58 (1991); *Feldmeier v. Watson*, 211 Ariz. 444, 447 ¶ 13 (2005). It is debatable under separation-of-powers principles whether the legislature can direct how courts apply our constitution.　*See State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 595 ¶ 25 (2017) (noting "this Court is authorized and obligated . . . 'to say what the law is'" (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803))); *Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485 ¶ 8 (2006) ("Although each branch of government must apply and uphold the constitution, our courts bear ultimate responsibility for interpreting its provisions.").　Nevertheless, because the challenge here is to VOS's compliance with § 19-111(A) and not a constitutional provision, we reserve that issue for another day.

¶29 Considering examples is helpful to understanding § 19-101.01's application. For instance, because § 19-111(A) requires the City Clerk to reject applications when a statement of organization is not filed "[a]t the same time," the Clerk must strictly apply and enforce § 19-111(A) by rejecting an application if the statement of organization was filed the previous day. She cannot forgive the error, and other persons could sue to challenge any lapse. *See* § 19-122(C). In contrast, because no statute permits the Clerk to reject an application on other bases, she must strictly apply and enforce the election statutes by accepting an application, even if it violates § 19-111(A)'s other requirements. *See supra* ¶ 24. If the City or others wish to challenge the proponent's compliance with § 19-111(A), it must file suit to do so. *See* § 19-122(C).

¶30 We look to our constitution and other statutes to determine whether the City Clerk was authorized to enforce § 19-111(A) by rejecting VOS's circulated and signed petition sheets. Our constitution provides several requirements directing the form and content of a referendum petition. *See* Ariz. Const. art. 4, pt. 1, § 1(9). It also directs the Secretary (and the City Clerk, by extension) to only place a referendum on the ballot when it complies with these requirements. *See id*. § 1(10). None of these requirements concerns an application for a petition, so the constitution does not authorize the City Clerk to reject a petition for failing to comply with § 19-111(A).

¶31 Likewise, no statutory provision authorizes the City Clerk's actions here. Sections 19-101(E), 19-114(B), and 19-121 through 19-121.04 direct with exacting detail how the Clerk must process petition sheets, count the signatures, and determine whether enough signatures support the referendum. For instance, within twenty days of receiving a referendum petition, the Clerk must remove petition sheets not containing a circulator's completed, signed, and unmodified affidavit. § 19-121.01(A)(1)(d). She also must determine whether a circulator was properly registered at the time of circulation and, if not, she must disqualify that circulator's petition sheets. § 19-121.01(A)(1)(h). But nothing authorizes the Clerk to determine whether the application for a serial number was legally sufficient and, if not, to reject all petition sheets and signatures. *See Leach v. Reagan*, 245 Ariz. 430, 436 ¶ 23 (2018) ("Relatedly, nothing in Title 19 authorizes or requires the Secretary to disqualify petition sheets or signatures if the statement of organization, or any amendments to it, did not comply with § 16-906. In contrast, elsewhere in Title 19, the

legislature has explicitly stated the Secretary's obligation to investigate the accuracy of initiative-related filings.").

¶32     The City expresses concern that confining the City Clerk's authority to explicit statutory grants of authority will lead to "a chaotic and haphazard enforcement of referenda law."   Specifically, it asserts that requiring statutory authorization calls into question whether a municipal clerk may, absent statutory authority, reject petitions that attempt to refer a non-legislative measure to the ballot—the basis for many challenges.   *See, e.g.*, *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 487 (1991).   The City also predicts that limiting the City Clerk's authority to its statutory authority will make enforcement of referendum requirements entirely dependent on private parties' fortuitous ability and willingness to file suit under § 19-122(C) to stop a referendum.   It argues that this circumstance is precisely what the legislature intended to avoid by finding that strict compliance with constitutional and statutory referendum requirements is necessary to safeguard the process.   *See* § 19-101.01.

¶33     The City's concerns are largely misplaced.   The constitution directs the City Clerk to refrain from placing a referendum on the ballot if the petition fails to comply with the constitution.   *See* Ariz. Const. art. 4, pt. 1, § 1(10).   The constitutional provisions governing referenda are self-executing, meaning the Clerk does not need statutory authority to enforce those provisions.   *See id.* § 1(16); *Crozier v. Frohmiller*, 65 Ariz. 296, 298–99 (1947) (holding that because the referendum provisions are self-executing, the Secretary of State may expend state funds to perform his referendum duties when the legislature fails to appropriate sufficient funds). Significantly, the constitution requires that the referred measure be a legislative act rather than an executive or administrative act.   *See* Ariz. Const. art. 4, pt. 1, § 1(8); *Wennerstrom*, 169 Ariz. at 488 (concluding that "only the [City] Council's legislative actions were subject to referendum"). Other constitutional requirements concern the form and contents of referendum petitions.   *See* Ariz. Const. art. 4, pt. 1, § 1(9).   Consequently, the City Clerk's ability to reject a petition that attempts to refer an administrative matter or that lacks the form and contents required by the constitution is unaffected by our decision.

¶34     Also, the legislature has authorized the City Clerk to reject petitions on multiple bases, *see* §§ 19-101(E); 19-114(B); 19-121 through 19-121.04, even though she is not authorized to reject petitions for some violations, like VOS's failure to strictly comply with § 19-111(A)'s

application requirements or a proponent's error in its statement of organization. *See Leach*, 245 Ariz. at 436 ¶ 23. But if the Clerk wishes to challenge petitions for such violations, she can do so by filing a lawsuit. *See* § 19-122(C) (authorizing "[a]ny person" to contest the validity of a referendum). And private parties, like the Developers here, have been zealous in challenging referenda. The City's fear that our holding will create an enforcement void is overstated. Regardless, if the City seeks additional enforcement authority for its Clerk, it must do so before the legislature, not the Court.

¶35 In sum, neither the constitution nor our statutes authorized the City Clerk to reject VOS's circulated and signed petition sheets because the application for a serial number was deficient. The City Clerk was required to strictly apply and enforce the referendum statutes, which confined her authority to processing the petition sheets as statutorily prescribed. *See* § 19-101.01.

### III. Remand is necessary to permit VOS to raise previously unavailable defenses to the § 19-111(A) challenge and to adjudicate any alternate challenges.

¶36 The City Clerk's lack of authority to reject the petition sheets and signatures for the application error does not end this matter. Defendant Dominium filed a counterclaim challenging the referendum petitions on multiple bases, including that the application failed to strictly comply with § 19-111(A). VOS did not answer the counterclaim or assert equitable defenses, but the time for doing so had not expired before the superior court entered its ruling on the request for a preliminary and permanent injunction. As VOS notes, it could not legally assert a laches defense against the City defendants. *See Mohave County v. Mohave-Kingman Ests., Inc.*, 120 Ariz. 417, 421 (1978) ("In general, equitable defenses . . . will not lie against the state, its agencies or subdivisions in matters affecting governmental or sovereign functions."). But VOS can assert equitable defenses against Dominium, and it should be given that opportunity on remand.

¶37 To summarize, we have decided that VOS did not strictly comply with § 19-111(A), and that error cannot be undone. All parties have had ample opportunity to be heard on that issue, and the superior court is bound by our decision. We remand to permit VOS to file an answer to the counterclaim and raise any applicable equitable defenses

against Dominium.     By doing so, we take no position on the merits of any such defenses.

**¶38**          Also, our decision does not preclude any defendants from challenging the petition on alternate bases, including that the matter is seeking to refer a non-referable administrative or executive matter.    We likewise take no position on the merits of such assertions.

**¶39**          Finally, we deny VOS's request for attorney fees pursuant to A.R.S. §§ 12-348(A)(4) and 12-2030(A).    Each provision authorizes fees for a party who "prevails by an adjudication on the merits" of claims asserted against a government entity.    *See* §§ 12-348(A)(4), -2030(A).    VOS has not prevailed on the merits of its claims.    If it ultimately prevails, it may ask the superior court to award it fees expended in this Court.

**CONCLUSION**

**¶40**          Based on the foregoing, we vacate the court of appeals' opinion.    Furthermore, we reverse the superior court's judgment and remand to that court to permit VOS to answer the Dominium counterclaim and allege any applicable equitable defenses.    If necessary, the court should also adjudicate any alternate bases for the defendants' challenge to VOS's petition.