IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VOICE OF SURPRISE, et al., *Plaintiffs/Appellants*,

*v.*

SKIP HALL, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0698 EL
FILED 1-31-2024

Appeal from the Superior Court in Maricopa County
No. CV 2022-013360
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Timothy A. La Sota, PLC, Phoenix
By Timothy A. La Sota
*Counsel for Plaintiffs/Appellants/Cross-Appellees*
*Voice of Surprise and Quintus Schulzke*

City of Surprise, Surprise
By Robert W. Wingo, Melinda A. Bird
*Counsel for Defendants/Appellees City of Surprise; Mayor Skip Hall;*
*Councilpersons Patrick Duffy, Chris Judd, Nick Haney, Aly Cline, Jack Hastings,*
*and Ken Remley; and City Clerk Kristi Passarelli*

Berry Riddell LLC, Scottsdale
By Jeffrey D. Gross, Michael W. Zimmerman
*Counsel for Defendant/Appellee Truman Ranch 46 SWC, LLC*

Gammage & Burnham, Phoenix
By Cameron C. Artigue, Jacqueline Marzocca
*Counsel for Defendant/Appellee/Cross-Appellant Dominium Inc.*

League of Arizona Cities and Towns, Phoenix
By Nancy L. Davidson
*Counsel for Amicus Curiae League of Arizona Cities and Towns*

---

**OPINION**

Acting Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Anni Hill Foster and Judge Daniel J. Kiley joined.

---

**C A T T A N I**, Judge:

**¶1** This is the second round of expedited appeals in this referendum matter concerning a City of Surprise ordinance challenged by Voice of Surprise, a political action committee.[1] In the first appeal, the Arizona Supreme Court held that VOS's referendum petitions were invalid due to a technical application error, but also that the City Clerk lacked authority to reject the petitions on this basis. *Voice of Surprise v. Hall (Voice II)*, 255 Ariz. 510, 516, 519, ¶¶ 26, 35 (2023). Because Developers had also contested the validity of the petitions, the Arizona Supreme Court remanded for the superior court to address VOS's potential equitable defenses to a private party's (rather than the City's) challenge as well as any alternative grounds for challenging the petition. *Id.* at 519, ¶¶ 36–38.

**¶2** On remand, the superior court enjoined transmittal of the referendum petitions for certification or placement of the referendum on the ballot on multiple bases. The court (1) determined that the matter sought to be referred was a non-referable administrative (not legislative) act and (2) rejected VOS's laches defense to Developers' claims that the petitions were invalid due to the application error.

---

[1] For ease of reference throughout this opinion, the parties involved are: Voice of Surprise and its chairman (collectively, "VOS"), the referendum proponents; the City of Surprise, the City Clerk, and other City officials (collectively, the "City"); and developers Dominium, Inc. and Truman Ranch 46 SWC LLC (collectively, "Developers"), the real parties in interest.

¶3        We hold that, because the ordinance to be referred merely implemented land use policy established years before, the ordinance was a non-referable administrative act.  Accordingly, and for reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶4        This case involves a referendum effort relating to the Surprise City Council's 2022 passage of Ordinance 2022-18, which approved a preliminary development plan for a large swath of property Developers want to develop.  Although the proposed referendum focuses on the 2022 action, the City's underlying actions involving this property date back to 2008.

¶5        At that time, the City undertook a series of interlocking steps aimed toward establishing a planned development on the property with a mix of residential as well as office, retail, and restaurant uses.  First, the City adopted an amendment to its General Plan 2020 changing the property's land use designation from low-density residential to mixed use.  *See* Resolution 08-104 (adopting GPA08-019).  The City then annexed the property, which had previously been part of a county island. *See* Ordinance 08-31.  When annexed, the property was placed into Surprise's single-family residential (R1-43) and general commercial (C-3) zones, consistent with its prior zoning as county land.  The next month, in September 2008, the City adopted Ordinance 08-37, which approved a planned area development ("PAD") application for the property.

¶6        As approved, the PAD designation incorporated Surprise's neighborhood commercial (C-1), community commercial (C-2), and mixed use planned development (MU-PD) zoning districts under the zoning code in effect at the time.[2]  *See* Old Code §§ 125-155(b)–(c), -186 (MU-PD), -187 (C-1), -188 (C-2).  It also contained a variety of detailed requirements involving overall design standards, including building height restrictions and architectural criteria, designated setbacks and parking needs, as well as specifications for landscaping, lighting, and signage.

¶7        Although the Old Code contemplated consideration of a preliminary development plan as part of PAD approval, *see* Old Code § 125-35(c)–(d), the PAD application did not include, and the City did not then approve, a preliminary development plan for the property.  The Old Code

---

[2]        Surprise's zoning code has since been amended, but all parties agree that the code in effect in 2008 ("Old Code") governs here.

likewise contemplated a concurrent determination of allowable residential density for the PAD property. *See* Old Code §§ 125-194(b)(5)(b.) (criteria for the city council's determination of reasonableness of densities in a PAD), -35(g)(2) (characterizing an increase in density as a "[m]ajor change[]" to a previously approved PAD); *see also* Old Code § 125-186(b)(2) (requiring allowable density in an MU zoning district be determined at the time of rezoning). Nevertheless, the City did not expressly consider or decide a specific allowable residential density as part of the 2008 PAD approval.

¶8 Regardless, the PAD zoning went into effect in October 2008. But development did not then proceed, and the land remained vacant for years. Eventually, in December 2021, Developers submitted a preliminary development plan for "a master-planned, horizontal mixed-use development integrating residential uses with commercial activities, such as retail, restaurant, office, service, mini-warehouse, and other similar uses," expressly in accordance with the permissible uses and other strictures of the 2008 PAD zoning. The plan proposed 601 dwelling units of three types on the property, yielding an overall residential density of 20.9 dwelling units per acre—just under the 21 dwelling units per acre maximum permitted under Surprise's general plan.

¶9 On August 16, 2022, the City Council passed Ordinance 2022-18 approving this preliminary development plan. Ordinance 2022-18 expressly noted that the plan was "substantially consistent" with the PAD zoning adopted by Ordinance 08-37 in 2008 as well as the Old Code, although it further acknowledged that the 2008 PAD approval had neither included a preliminary development plan nor established a residential density allowance.

¶10 Opposing this action, VOS sought to refer Ordinance 2022-18 for a vote by the people. To qualify for the ballot, VOS would have to submit petition sheets with 3,114 signatures within 30 days after the ordinance was adopted. *See* Ariz. Const. art. 4, pt. 1, § 1(8); A.R.S. § 19-142(A). VOS initiated its referral effort on August 29 by filing with the City Clerk an application for a petition serial number and a statement of organization—but without including the text of the challenged ordinance as required by A.R.S. § 19-111(A). Although the City Clerk noticed the omission, she accepted the application without comment and issued a serial number for the petition sheets. On September 16, VOS submitted petition sheets with 5,432 signatures supporting referral.

¶11 A week later (after the 30-day period for submitting referendum petitions had expired), Dominium sent the City Clerk a letter

urging rejection of the petition sheets for several reasons, including VOS's failure to attach the ordinance to its serial-number application and that the ordinance was administrative and thus not referable. Relying on the application error (without taking a position on any alternative grounds), the City Clerk rejected all petition sheets and signatures on October 5, 2022.

¶12 Two days later, VOS filed a statutory special action against the City, also naming Developers as real parties in interest. *See* A.R.S. § 19-122(A); *see also* Ariz. R.P. Spec. Act. 2(a)(1). VOS sought injunctive and declaratory relief compelling the City Clerk to accept and process the petition sheets for submission to the county recorder for verification and, ultimately, placement of the referendum on the ballot.

¶13 The City answered, raising as defenses both the application error and that adoption of Ordinance 2022-18 was a non-referable administrative act. The City and Dominium, both joined by Truman Ranch, also opposed VOS's injunction request, relying on (among other arguments) the application error and the administrative-act issue. Dominium then timely filed an answer and counterclaim, again asserting the application error as well as the administrative-act issue.

¶14 After an evidentiary hearing, the superior court denied VOS's request for injunctive relief and entered judgment for all defendants. The court reasoned that, given the statutory requirement of strict compliance in the referendum process, VOS's application error precluded the relief it sought. In light of that ruling, the court declined to reach the defendants' alternative arguments, including their assertion that Ordinance 2022-18 was a non-referable administrative act. VOS appealed, and this court affirmed. *See Voice of Surprise v. Hall (Voice I)*, 255 Ariz. 204, 205, ¶ 2 (App. 2023).

¶15 The Arizona Supreme Court granted review, reversed, and remanded. *See Voice II*, 255 Ariz. at 519, ¶ 40. Although agreeing "that VOS did not strictly comply with § 19-111(A), and that [application] error cannot be undone," *id.* at 516, 519, ¶¶ 26, 37, the court held that the City Clerk was not authorized to reject the petition sheets on that basis, *id.* at 519, ¶ 35. The court remanded because Dominium (not just the City) had also challenged the referendum petition based on the now-established application error, but the private party's counterclaim might be subject to a laches defense that had not yet been litigated. *Id.* at ¶¶ 36–37. The court further observed that all defendants' alternative bases for challenging the petition—"including that the matter is seeking to refer a non-referable administrative

or executive matter"—could be addressed in the first instance on remand. *Id.* at ¶ 38.

**¶16** On remand, the City (joined by Truman Ranch) moved for summary judgment on VOS's complaint on the basis that Ordinance 2022-18 was not a legislative act and was instead a non-referable administrative act.[3] After briefing and argument, the superior court granted summary judgment against VOS, holding that adoption of Ordinance 2022-18 was a non-referable administrative act and that VOS thus was not entitled to the relief it requested. The court alternatively ruled that VOS had not established a laches defense to the petitions' invalidity based on the application error.

**¶17** The court denied VOS's motions for reconsideration and new trial and entered final judgment dismissing VOS's claims and enjoining the City from processing the petitions or placing the referendum on the ballot. VOS timely appealed. *See* A.R.S. § 19-122(A); *see also* ARCAP 10.

## DISCUSSION

**¶18** The Arizona Constitution reserves to the qualified electors of incorporated cities the power of referendum. Ariz. Const. art. 4, pt. 1, § 1(8). This power permits qualified electors to submit city council actions to a popular vote—but only if the action is legislative, not administrative, in nature. *Id.* (power of referendum on matters on which the relevant governmental entity is "empowered by general laws to legislate");

---

[3] Developers' role in the litigation expanded after remand as well. Even before the mandate issued, Truman Ranch filed an answer and counterclaim to VOS's complaint, along with a crossclaim against the City under A.R.S. § 19-122(C), asserting invalidity of the referendum petitions based on the application error, the administrative-act issue, and other grounds. Dominium likewise filed a crossclaim against the City Clerk under A.R.S. § 19-122(C) seeking to enjoin placement of the referendum on the ballot due to the application error and the administrative-act issue.

The City answered without opposing either crossclaim and likewise did not oppose Developers' respective motions for judgment on the pleadings on the crossclaims. VOS intervened, however, and opposed Developers' dispositive motions on laches and other grounds. VOS also successfully moved to dismiss Dominium's counterclaim (and later its crossclaim), largely on the basis that as a foreign (Minnesota) corporation not registered to do business in Arizona, Dominium was not permitted to "maintain" a judicial proceeding in this state. *See* A.R.S. § 10-1502(A), (E).

*Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488 (1991). We review de novo the superior court's determination that adoption of Ordinance 2022-18 was not legislative and thus non-referable. *See Redelsperger v. City of Avondale*, 207 Ariz. 430, 432, ¶ 7 (App. 2004); *see also Beck v. Neville*, CV-22-0134-PR, 2024 WL 91185, at *2, ¶ 10 (Ariz. Jan. 9, 2024) (summary judgment).

**¶19** The distinction between legislative and administrative acts is not always easy to discern. *See Wennerstrom*, 169 Ariz. at 489. As a general rule, legislative acts address "subjects of a permanent and general character" and "make new law," "prescribe[] a new policy or plan," or "declar[e] a public purpose and mak[e] provision for ways and means of its accomplishment." *Id.* (citation and emphasis omitted); *see also id.* (citing *Pioneer Tr. Co. of Ariz. v. Pima County*, 168 Ariz. 61, 65 (1991)) ("[A]n act that declares a public purpose and provides for the ways and means of its accomplishment is legislative."). In contrast, administrative acts address "subjects of a temporary and special character" and "execute law already in existence," "pursue[] a plan already adopted" (by the enacting legislative body or a superior power), or "merely carr[y] out the policy or purpose already declared by the legislative body." *Wennerstrom*, 169 Ariz. at 489 (citation and emphasis omitted). Accordingly, we determine whether a given action was legislative or administrative by "consider[ing] whether the action is (1) permanent or temporary, (2) of general or specific (limited) application, and (3) a matter of policy creation or a form of policy implementation." *Redelsperger*, 207 Ariz. at 433, ¶ 15 (reciting the *Wennerstrom* factors).

**¶20** The most compelling consideration in this context is the third: whether Ordinance 2022-18 created new policy or implemented existing policy. *See Wennerstrom*, 169 Ariz. at 489. And here, Ordinance 2022-18 merely implemented the policy and overall plan created in 2008 with the City's adoption of PAD zoning for the property.

**¶21** In 2008, Ordinance 08-37 rezoned the property from single-family residential and general commercial to a PAD incorporating the neighborhood commercial (C-1), community commercial (C-2), and mixed use planned development (MU-PD) zoning districts—rendering a legislative decision determining (and limiting) the permissible land uses for future development. *See Fritz v. City of Kingman*, 191 Ariz. 432, 433, ¶ 7 (1998) (reiterating that rezoning decisions are legislative). The PAD approval also adopted a variety of detailed standards—design, height, and architectural criteria constraining buildings along with setbacks, landscaping, pedestrian, and parking requirements—that specified the character of development contemplated and how such development was to

proceed. Although the PAD—by design—authorized "a variety of appropriate land uses including retail, employment, and commercial with residential components," it set the parameters and policy for the development to come. *Cf. Pioneer Tr.*, 168 Ariz. at 65 ("At that point, the decision had been made.").

**¶22** Ordinance 2022-18 implemented this previously established development policy. Developers' 2022 proposal chose a variety of uses from within the menu of land uses authorized in 2008, and it rendered a concrete site plan consistent with the discrete standards adopted in 2008. The City Council acknowledged as much in Ordinance 2022-18 itself, (1) reciting that Developers' proposal "would implement the [2008] PAD by allowing development of land uses permitted by the PAD in accordance with design and development standards set forth in the PAD" and (2) expressly requiring that "development and use of the subject site . . . shall be substantially consistent with and shall be regulated by the [2008 PAD], Ordinance No. 08-07."

**¶23** Highlighting the omission of a preliminary development plan and residential density allowance from the 2008 PAD approval, VOS argues that Ordinance 2022-18 must have created, not just implemented, policy. VOS asserts that, because the 2008 enactments permitted so many uses and allowed such a wide range of residential densities, they necessarily contemplated future legislative acts.

**¶24** To be sure, the Old Code contemplated consideration of a preliminary development plan and determination of allowable density at the time of rezoning. *See* Old Code §§ 125-35(c)–(d), -194(b)(5)(b.). And the City acknowledged the prior omissions when adopting both via Ordinance 2022-18.

**¶25** But design and development standards *were* adopted in 2008 as part of the PAD approval, even if not as components of a preliminary development plan. *See also* Old Code § 125-35(c)(2)(a.)–(*l.*) (listing types of design and development criteria to be considered). And the 2008 PAD authorized—and limited—land use by incorporating three discrete zoning districts. Developers' 2022 preliminary development plan did not seek different design standards or new land uses but rather worked within the strictures of the established PAD zoning. Although VOS asserts that the menu of land uses allowed under the 2008 PAD was too broad, the time to challenge the breadth of permissible uses was in 2008. *See Pioneer Tr.*, 168 Ariz. at 66. At that point, the public was on notice of which uses were sanctioned, rendering subsequent approval of conforming plans

administrative in nature. *Cf. Redelsperger*, 207 Ariz. at 437, ¶ 27 (quoting *Sandblom v. Corbin*, 125 Ariz. 178, 184–85 (App. 1980)) (noting that issuance of use permits is generally administrative and zoning generally legislative because "the public is not affected to as great a degree by the issuance of [use] permits as they would be in cases of changes in zoning, because they are already on notice that these special uses are permissible by administrative decree"). Indeed, the additional detail provided in the 2022 plan was in the nature of a *site plan* conforming to the 2008 strictures, and approval of a conforming site plan is an administrative act. *See id.* at 438, ¶ 28 (citing 3 Edward H. Ziegler, Jr. *et al.*, *Rathkopf's The Law of Zoning and Planning* § 46:7 (4th ed. 1994)).

**¶26** Likewise, although the 2008 PAD did not expressly designate the permissible residential density, the density question was not the blank slate VOS alleges. The 2008 PAD zoning incorporated the mixed-use planned-development zoning district, which would generally allow any variety of residential use permitted in the city. *See* Old Code § 125-155(b) (MU-PD column). But the Old Code also mandated that density in PAD zoning, as in an MU-PD district itself, be consistent with the density designated in Surprise's general plan. Old Code §§ 125-186(b)(1) (MU-PD density ranges consistent with general plan), -194(b)(5)(a.) (PAD density flexible, but consistent with the land use as designated in the general plan). The 2008 PAD, albeit by default, thus did incorporate a range of permissible densities based on the property's mixed-use designation in General Plan 2020: up to 21 dwelling units per acre.

**¶27** This range is admittedly broad, and the City only ultimately picked a specific number—601 dwelling units, corresponding to a density of 20.9 dwelling units per acre—in Ordinance 2022-18. But as of 2008, the permissible range was on the record in a PAD approval that, by its terms, applied to "[a]ll present and future owners of the property"—owners who were thus entitled to rely on the approvals (and required to comply with the restrictions) adopted in the 2008 PAD. And the density specified in Ordinance 2022-18 was less than the maximum density allowed. *Cf.* Old Code § 125-35(g)(2) (characterizing an *increase*, but not a decrease, in density as a major change to a PAD approval). The "logical and practical time" for any challenge to a density range perceived as overly broad was in 2008, "after the contested proceedings and public hearings, . . . before the legislative members leave office through expiration of terms or elections . . . . [and] also before owners, developers, and lenders expend huge sums of money to comply with the conditions." *See Pioneer Tr.*, 168 Ariz. at 66.

¶28 Furthermore, Ordinance 2022-18 lacked other hallmarks of policy-creating actions. For example, this court's last foray into the legislative/administrative question—*Workers for Responsible Development v. City of Tempe*, 254 Ariz. 505 (App. 2023)—highlighted an ordinance's *substantive* additions to prior zoning that rendered it legislative: "extensive tax, expenditure, sale, and development decisions beyond what is provided in the zoning designation." *Id.* at 515, ¶ 44. Here, Ordinance 2022-18 included no such provisions. The *Workers* court also observed that the ordinance at issue there "neither identifies the previously declared policy decision it intends to implement nor suggests that the MU-4 zoning designation is the policy it intends to carry out." *Id.* at ¶ 46. Here, in contrast, Ordinance 2022-18 did just that: It expressly cross-referenced the City's steps in 2008 establishing the policy for the property (from Resolution 08-104 approving general plan amendment GPA08-019, through annexation by Ordinance 08-31, to approval of specifically delineated PAD zoning pursuant to Ordinance 08-37). And it explicitly found that the proposed preliminary development plan "is substantially consistent with" and "would implement" the previously adopted PAD. In short, Ordinance 2022-18 did not create new policy but rather implemented a policy previously adopted.

¶29 As to the other two *Wennerstrom* factors—permanent/temporary and general/specific—VOS urges that each leads to the conclusion that adoption of Ordinance 2022-18 was a legislative act. *See Redelsperger*, 207 Ariz. at 433, ¶ 15. VOS asserts that Ordinance 2022-18 was permanent because its permissions and restrictions were "just as permanent as any rezoning," creating entitlements that run with the land. But while Ordinance 2022-18 was "permanent" in the same sense as a use permit or approved plat, its permanence stemmed from conformity with the 2008 legislative act—because the 2008 PAD rezoning was "permanent," so was approval of a conforming use. Although VOS relies on *Workers* for this point, the *Workers* analysis in fact undercuts its argument. There, the development agreement to be referred established entitlement, for example, to purchase certain property and receive deviations from otherwise-applicable zoning. *Workers*, 254 Ariz. at 514, ¶¶ 37, 40. The parameters here, however, were set in 2008.

¶30 VOS likewise asserts that Ordinance 2022-18 was of general and not limited scope, but its argument merely restates that the burdens and benefits of preliminary development plan approval and density designation are "permanent." Moreover, its primary authority (*Workers* again) undermines its position. The *Workers* court highlighted the ordinance's "declar[ation of] a public purpose" (to "improve or enhance the

economic welfare" of residents) and "provi[sion] for the ways and means of its accomplishment" (including a phased master-planned real estate development constructed over 15 years, providing for phased purchase of city property, agreement to tax abatement on one side and cash contributions to specified city funds on the other). *Id.* at 514–15, ¶¶ 38–43. In contrast, here, any comparable declaration of public purpose and plan to accomplish it arose not with Ordinance 2022-18, but rather with the adoption of PAD zoning in 2008.

¶31　　　　In sum, adoption of Ordinance 2022-18 was an administrative act implementing the policies established by legislative act in 2008, and thus is not referable. *See Wennerstrom*, 169 Ariz. at 488. The superior court properly so held, and thus properly dismissed VOS's claims and enjoined placement of the matter on the ballot. Because the referendum effort fails for this reason, we do not address the viability of VOS's laches defense against Developers' assertion of invalidity based on the application error or Dominium's cross-appeal from dismissal of its counter- and crossclaims. Because VOS has not "prevail[ed] by an adjudication on the merits" against a government entity, *see* A.R.S. §§ 12-348(A), -2030, we deny its request for attorney's fees against the City on those bases.

## CONCLUSION

¶32　　　　The judgment is affirmed.

